## PHELAN CO. v. SCHNEIDER.

### No. 3757.

Court of Civil Appeals of Texas. Beaumont.
Dec. 18, 1940.

Rehearing Denied Dec. 31, 1940.

C. A. Lord, of Beaumont, for appellant.

D. F. Sanders and John A. Veillon, both of Beaumont, for appellee.

WALKER, Chief Justice.

On the 27th day of April, 1939, the truck of appellant, The Phelan Company, collided with the car of appellee, J. E. Schneider, injuring him and damaging his car. This was an action by appellee against appellant for the damages suffered by him in the collision. On the trial, the jury found that the collision was not the result of an unavoidable accident and convicted appellant of negligence proximately causing appellee's injuries in the two respects charged against it; in driving its truck at the time of the collision at a rate of speed in excess of twenty miles per hour, and in failing to keep a proper lookout. Appellee was acquitted of the two acts of negligence charged against him by appellant: (a) "Turning his automobile to his left and to the Westward and across the West half of Park Street at the time and place and under the circumstances." (b) "The failure of the plaintiff to keep a proper lookout for vehicles traveling Southward on Park Street at the time he made said turn." Damages were assessed at $2,350, $2,000 for his personal injuries and $350 for the damages to his car. From the judgment against it in favor of appellee for the damages awarded by the jury, appellant has prosecuted its appeal to this court. The only point made is that on the entire evi-

dence appellee was guilty of contributory negligence, as a matter of law.

The collision occurred about the middle of the 1300 block on Park street in the City of Beaumont. This block is about two and one-half times the length of the ordinary block. At that point, Park street runs in a straight line north and south from its intersections with Blanchette (Austin) and Emmett streets, and is about forty feet wide. An old building of the Texas Ice Company, with a drive in, is on the west side of Park street, and about the middle of the 1300 block. Appellee is about 72 years of age and very hard of hearing.

■■ Testifying in his own behalf, appellee made this statement: "You see, after I turned I thought the man would see me turn and he would slow down."

It is appellant's theory of this case that appellee knew that he could not safely cross the street in front of appellant's truck at the rate of speed it was making when he first saw it and started to make his turn, but he made the turn expecting appellant to reduce the speed of its truck. If that theory of the evidence must be accepted, then, on authority of Burton v. Billingsly, Tex.Civ.App., 129 S.W.2d 439, appellee was guilty of contributory negligence, as a matter of law. In that case Burton, in the middle of the block, turned his automobile to his left in front of an oncoming automobile, knowing that this automobile was travelling at about forty miles an hour, and that he could not make the crossing unless the speed of this automobile was reduced. In explaining his attempt to cross the street, and it was his only explanation, he testified that he thought the driver of the approaching car, "surely would reduce his rate of speed before reaching him." Knowing that the driver was violating the law, the court held that Burton could not indulge the "thought"—indulge the presumption—that the driver would reduce the speed of his truck to a lawful rate of speed. In support of its construction of the statement made by appellee, appellant brings forward in its brief the following additional testimony given by him:

"I turned away from the east side of the street and headed into the west half of Park street; I kept on driving across the west half of Park street until I was struck. There is no street between Emmett avenue coming in from the east and Austin street; also called Blanchette street. When I turned to my left, I was not turning into a street. At that time I was driving about 20 miles per hour; I slowed down just a little bit when I turned because my car skidded; the pavement was wet there. I turned my car suddenly to the left, driving 20 miles an hour, and then I drove straight into the curb. I got struck when the front wheel of my car was over where the curb should be. The distance from where my car was struck to where I thought the approaching truck was when I first saw it—I stepped it off at 85 steps. I saw the Phelan truck coming around the corner, the turn there at Austin street. I could not say how fast it was coming, all I know is he hit me when I got over across the street; that is all I know. I judge it was coming about 45 miles an hour. At the time I saw the Phelan truck 85 steps away, I judge it was coming 45 miles an hour. I could not say how fast it was coming when I first saw it, it must have been coming fast. I know it was not creeping along by a long ways. When it made that turn there it looked like it was coming at a pretty rapid speed. My judgment as to how fast it was coming would be about 45 miles an hour. At the time I started to make the left turn, the Phelan car was about 300 feet from me. At that time I judge it was travelling about 45 miles an hour.

"Q. Did you have time, from your judgment, from the standpoint you started to make that turn, would you say you had time to make that turn before he got to where you were on Park Street? A. Well, that is a hard question to answer.

"Q. When you turned to your left, you say you looked? A. You see, after I turned I thought the man would see me turn and he would slow down. * * *

"Q. When you started to make the left hand turn, in your opinion, if the truck had been travelling at 20 miles an hour, I ask you whether or not you would have had time to make a turn to the left? A. I had lots of time."

This testimony brought forward by appellant does not compel the conclusion that appellee attempted to cross in front of its truck, knowing that he could not cross unless the rate of speed of the truck was reduced. On that point we quote again appellee's statement: "Q. Did you have time, from your judgment, from the standpoint you started to make that turn, would you say you had time to make that turn

before he got to where you were on Park Street? A. Well, that is a hard question to answer."

Even on that statement, the court could not have instructed a verdict against appellee.

The law of this case is simple. If, at the time he started to make his turn across Park street, appellee, in the exercise of ordinary care, believed he could safely cross in front of appellant's approaching truck, then he was not guilty of contributory negligence as a matter of law. As we have said above, that issue was not foreclosed against him by the testimony brought forward by appellant. The testimony brought forward by appellee clearly raises the issue in his favor, that he was not guilty of contributory negligence as a matter of law. We quote:

"Just about a quarter of eleven I left my place to come up for dinner to my son-in-law's. My son-in-law lives on Park street. I was coming up Park street. I was coming up Park street north. As near as I could go, I was coming up Park street; just about the time I got abreast of it (the old ice plant) I was ready to turn. I looked in my glass to see if anybody was following me; I seen there was not; I looked ahead, and there was a car coming just around the bend. That was about 600 feet, and when I started to turn he was about 300 feet, and I turned and run in on the other side where the curb was to be; I turned west to the left, and when I turned I just got the front wheel of the car to the curb; I suppose a lot of you know where that is on Park street there; ice factory; the front wheel of that truck struck me and throwed me right across on the seat over there that way and broke my collar bone and hurt my shoulder. After I turned my car to the left, I think it must have travelled about 50 feet before it was struck—well the front wheel was over where the curb is supposed to be. I turned to the left after looking in my glass. I could not say how fast the Phelan car was coming; all I know, he hit me when I got over across the street; that is all I know. I judge it was coming about 45 miles.

"Q. And you, after looking in your glass, you turned to your left, did you? A. Yes, I seen that he was going, I could make that turn easy. I have been driving a car long enough to understand distance.

"Q. Although the Phelan car had traveled, you say, you thought 300 feet while you looked in the glass to see if anything was behind, and before you made your turn, you nevertheless made the turn in front of that oncoming car, did you say? A. Well I seen that the car was far enough ahead for me to make the turn easy.

"Q. Did you think it was coming very fast? A. Well I couldn't say how fast it was coming. I didn't expect it was coming—."

This testimony by appellee clearly raised the issue that, having observed appellant's truck and its rate of speed, he thought he could safely cross Park street.

■ Subdivision (K) of Article 801 of the Penal Code provides that "the person in charge of any vehicle upon any public highway before turning, stopping or changing the course of such vehicle shall see first that there is sufficient space for such movement to be made in safety." As a matter of law, appellee did not violate this statute; the evidence quoted above raised the issue in his favor that, at the time he attempted to make the crossing, he thought there was "sufficient space for such movement to be made in safety." This statute does not impose on the driver of the automobile the absolute duty to "see first" that there is sufficient space to turn, stop or change the course of his car in safety, but only to exercise ordinary care in making that decision. O. K. Theater Corp. v. Rehmeyer, Tex.Civ.App., 115 S.W. 2d 985. We do not understand that appellant construes this statute as invoking an absolute duty. We quote from its brief: "In this case the plaintiff before changing the course of his automobile—that is, before turning the same quickly and directly to his left across his left-hand side of Park Street, in the middle of a block, saw the defendant's truck approaching, recognized the short distance it was from him and estimated its speed; but notwithstanding that, he made the turn to the left in the middle of the block, knowing, as he in effect says, that there was not sufficient space for such movement to be made in safety, because he says that he thought the driver of the truck would see him turn and would slow down; so it follows as the night the day that he did recognize and realize that there was not sufficient space or time in which to make the turn in

safety so far as his own action was concerned."

The evidence does not support appellant's contention brought forward in this argument that appellee knew "that there was not sufficient space for such movement to be made in safety"; on the contrary, the evidence raised the issue that he thought he could make it in safety.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.