**FISHER et al. v. LEACH.**

No. 11901.

Court of Civil Appeals of Texas. San Antonio.

Feb. 9, 1949.

Rehearing Denied March 9, 1949.

Leonard Brown, San Antonio, Archie Brown, Jr., San Antonio, Leonard Brown, Jr., San Antonio, for appellants.

Charles J. Lieck, San Antonio, Schlesinger, Goldstein & Semaan, San Antonio, for appellee.

NORVELL, Justice.

Shortly after midnight, on May 27, 1946. L. W. Leach, a police officer of the City of San Antonio, was severely injured when his motor cycle and a taxicab operated by the White and Blue Cab Company collided at or near the intersection of West Commerce and Zarzamora Streets in San Antonio, Texas. Commerce Street runs east and west and crosses Zarzamora Street at right angles. Leach, as plaintiff, brought suit against K. M. Fisher and Sam Shannon, the owners of the White and Blue Cab Company, and recovered a judgment for the sum of $30,000.00 based upon special findings of a jury.

It appears that shortly before the collision, appellee and a fellow officer named Ligon were patrolling the streets of San Antonio and travelling in an easterly direction along West Commerce Street. They observed appellants' cab and were of the opinion that it was violating the speed limit. The officers attempted to overtake the cab, but another car passed them, as well as the taxicab, while all the vehicles involved were travelling east on Commerce Street. This car and the cab passed other automobiles along Commerce Street, but the officers were only a short distance behind when the Commerce Street-Zarzamora intersection was reached. The officers slowed down to approximately five or ten miles an hour as they were meeting traffic, and when the way was clear ahead Leach started after the speeding car which was ahead of the cab, leaving Ligon to take the cab. As Leach was about to pass the cab the collision took place. Appellee's hand was mashed to the handle bar. He threw up his arm to protect himself and the cab hit him again, this time on the knee, throwing appellee over the hood of the cab. He landed across the street on his back and head. According to appellee, appellants' cab driver, Cantu, had cut sharply to the

left in order to turn north on Zarzamora Street and thus caused the collision. The jury findings were in accordance with this theory.

Appellants present twenty-five points upon which they rely for a reversal of the judgment.

By the first group of points, Nos. 1 to 7, inclusive, it is urged that the trial judge erred in his rulings relating to the admission and exclusion of evidence.

By the next group of points, Nos. 8 to 18, inclusive, it is urged that the court erred in the method employed in submitting the case to the jury.

Points Nos. 19 and 20 are not argued but are waived.

By points Nos. 21 and 22 it is asserted that the judgment should be reversed because of improper jury argument.

Point No. 23 asserts that the award of damages is excessive.

Point No. 24 asserts that the evidence offered by appellee shows conclusively that he was guilty of contributory negligence.

By the last point (No. 25) it is contended that the judgment should be reversed because of jury misconduct.

■ Appellants' first point is overruled. Dr. Harry B. Macey, an orthopedic surgeon, testified for appellee by deposition. Upon cross-examination the following question was propounded: "Can you state as a matter of fact that the condition which you found upon examination of Leach resulted from an injury received in May, 1946, and not from injuries received prior to that date?" The doctor's answer was "No." The answer was properly excluded by the trial court. The doctor was testifying as an expert and all he could properly state would be an opinion and not a matter of fact.

■ Appellants were seemingly trying to develop the theory that appellee's back injuries could have been caused by the continuous riding of a motor cycle prior to the time of the collision with the cab, or by some prior injury. This matter appears to have been fully developed by means of other and proper questions propounded to the witness, so that the ex-

cluding of the answer could not have prejudiced appellants in any way.

■ By the second point it is contended that the answer given by Leach to the effect that he "had to slow down" when approaching the Zarzamora intersection was improperly admitted as a conclusion of the witness. The reason for his slowing down was explained by Leach upon the grounds that he was meeting approaching traffic. The point is overruled.

■ Raymond South, Fire and Police Commissioner of the City of San Antonio, Leach's superior, was asked the following question and gave the following answer:

"Q. Let me ask you if from what you observed of Leach, his physical condition, his apparent physical condition, could you use him as a police officer in San Antonio? A. I don't believe I could use him, sir."

Appellee urges that appellants' objection was actually lodged against a previous question of similar purport. However that may be, we are of the opinion that the answer was properly received. Although the Commissioner was not a doctor, he was in charge of the Police Department of the City of San Antonio. From appellee's standpoint it was material to show that he could no longer perform the duties required of a police officer. The evidence discloses that an attempt was made by the Police Department to utilize Leach's services after the collision. He was transferred to a desk job, but was unable to perform the services required of him there and was finally discharged because of physical disability. We think the answer of the Commissioner was proper for the jury's consideration upon a relevant issue and appellants' third point is overruled.

■ The trial court sustained an objection to the following question propounded to Joe Morales, a police officer: "From your experience as an investigator and from training that you have had, and the books you have studied, are you able to state approximately what length of time or distance it will require to stop a 1942 Chevrolet sedan going twenty miles per hour, assuming a dry street, assuming the

brakes in excellent condition, and assuming the driver had normal reaction time?"

The brief and presumedly the record does not disclose what the witness' answer would be had he been permitted to answer the question. 3 Tex.Jur. 470, § 331. It further appears that this witness was questioned in some detail concerning skid marks and the distance it would take a car to stop. It appears that the witness actually gave all the information he had with reference to these matters. Appellants' fourth point is overruled.

■ By the fifth point appellants complain of the action of the trial court in refusing to allow David Cantu, Jr., the driver of appellants' taxicab, to state his estimate of the speed of the motor cycle based upon the force of the impact, "the way it hit the car and the damage it did to both the car and the motor cycle." Cantu testified that he did not see the motor cycle before the collision. The opinion as to the rate of speed was therefore based entirely upon the impact and damage to the vehicles involved. Such testimony by a nonexpert is generally not admissible. Union Bus Lines v. Moulder, Tex.Civ.App., 180 S.W.2d 509; 9 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., § 6232, pt. 2, page 692; 1 Baylor Law Review 226. Further, the record failed to show what the answer of the witness would have been had he been allowed to answer the question. No reversible error is disclosed and the point is overruled.

■■ It appears that Cantu, the driver of the cab, pleaded guilty to the offense of aggravated assault with a motor vehicle, Article 1149, Vernon's Ann.Pen.Code. The judgment disclosing a plea of guilty, the complaint and the information, were all introduced in evidence. The information charged that Cantu while operating a motor vehicle "wilfully and with negligence collided with a vehicle in and on which the said L. W. Leach was then and there riding." Negligence was an element of the offense charged. Guajardo v. State, 139 Tex.Cr.R. 201, 139 S.W.2d 85. We are of the opinion that the plea of guilty in the criminal case was admissible as an admission. As the record was offered and received in evidence, no error is disclosed by a showing that Cantu was questioned about the plea of guilty or that inquiry as to the record was made of the Clerk of the County Court at Law. Appellants' points Nos. 6 and 7 are overruled.

■ We overrule appellants' eighth and ninth points wherein objection is made to the trial court's definition of the term "proximate cause." Appellants assert the definition amounts to a charge on the weight of the evidence, in that it contained an assumption that Leach had been injured and, further, was defective in that it fails to state that proximate cause "need not be the sole cause, but it must be a concurring cause which contributed to the production of the result in question and but for which the said result would not have occurred."

The charge is not subject to the objections urged against it. The definition given stated that there may be more than one proximate cause of an event, which was the same as saying that a proximate cause need not be the sole cause. A similar charge was approved in Kirkpatrick v. Neal, Tex.Civ.App., 153 S.W.2d 519. The definition did not embody a charge on the weight of the evidence.

■ By their tenth and eleventh points the appellants contend that an issue should have been submitted to the jury upon the theory of the "last clear chance" or "discovered peril." The court did submit a discovered peril issue by inquiring if Leach "prior to the collision actually discovered and realized that the defendant's automobile was in a position of peril, if any, from which it would probably not be able to extricate itself?" This question was answered in the negative by the jury. This issue was answered unfavorably to appellants and, considering appellants' objections lodged against it, seems to have fairly covered the situation disclosed by the evidence. No further issue was required to submit the theory and the record does not disclose that an issue framed in more appropriate wording was tendered to the trial court by appellants with the request that it be given. Appellants' tenth and eleventh points are overruled.

Appellants' twelfth and fourteenth points raise similar contentions. Special Issue No. 3 inquired as to whether or not the operator of appellants' cab failed to extend his left hand out in a horizontal position as a signal that he intended to make a left turn. Special Issue No. 7 inquired as to whether or not the cab operator failed to give any warning or signal of his intention to turn to the left. Special Issue No. 1 inquired as to whether or not the cab operator turned his cab to the left without first seeing that there was sufficient space to make a left-hand turn in safety. Special Issue No. 10 inquired as to whether or not the cab driver kept a proper lookout.

Special Issue No. 1 is based upon an alleged violation of Article 801(K), Vernon's Ann.Pen.Code, while Special Issue No. 3 is based upon an alleged violation of an ordinance of the City of San Antonio. These issues present the theory of negligence per se. Issues Nos. 10 and 7 present issues of common law negligence which, while based upon asserted acts similar to those denounced by the penal code and the ordinance, are not identical and the issues do not result in a double submission of appellee's theories, as contended by appellants. Hicks v. Brown, Tex.Civ.App., 128 S.W. 2d 884, Id., 136 Tex. 399, 151 S.W.2d 790. Appellants' twelfth and fourteenth points are overruled.

We also overrule appellants' thirteenth point wherein it is asserted that there is no evidence authorizing the submission of Special Issue No. 1 above referred to. We are required to view the evidence in the light most favorable to appellee, Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683, and when thus viewed the evidence is deemed sufficient to support the submission of an issue based upon the allegation that Article 801(K) of the Penal Code had been violated.

The trial court, over appellants' objection, submitted the following issue to the jury:

"Do you find from a preponderance of the evidence that on the occasion in question the plaintiff was on parol duty as a police officer of the City of San Antonio in the pursuit of one who had driven in excess of thirty miles per hour?"

The jury answered the question in the affirmative.

Article 791, Vernon's Ann.Pen.Code, contains an exception relating to speed limit regulations which is applicable to police patrols. It would seem that upon authority of Hampton Co. v. Joyce, Tex.Civ. App., 80 S.W.2d 1066, that whenever an issue is submitted relating to the exceeding of a speed limit by a police officer, it is proper to submit an issue similar to that hereinabove set out and given by the court in this case. However, in this case the issues of contributory negligence were submitted without recourse to the doctrine of negligence per se, and it was not necessary for the court to submit the issue complained of. There is nothing inherently prejudicial in submitting an immaterial issue or one concerning which there is no conflict or dispute in the evidence. While under certain circumstances the submission of such issues may result in prejudice and a reversal of the judgment, this result does not necessarily follow in all cases. We are of the opinion that Rule 434, R.C.P., is applicable to the situation and a reversal should not be ordered unless it appears that the submission of the unnecessary issue "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

In the present case it was readily evident that appellee was a police officer and engaged in patrolling the San Antonio streets in the performance of the duties enjoined upon him. If, by reason of this fact, the members of the jury were inclined to look upon his case with favor, it was a circumstance or factor supplied by the evidence and the mere giving of the unnecessary issue complained of was not reasonably calculated to deprive appellants of a fair trial. We overrule appellants' fifteenth point.

In submitting the issue of proper lookout, the court instructed the jury that "the term 'proper lookout,' as used in this

charge means such a lookout as a person of ordinary prudence would keep under the same or similar circumstances."

We overrule appellants' sixteenth point, wherein it is asserted that no issue of negligence was submitted in connection with the issue relating to "proper lookout."

■ Appellants' seventeenth point is likewise overruled for a similar reason. In the contributory negligence issue inquiring as to whether or not appellee had his motor cycle under proper control, the court instructed the jury that by "proper control" was meant "such control as a person of ordinary prudence would keep under same or similar circumstances."

■ Appellants' eighteenth point is based upon their objection No. 52, directed against the court's charge. This objection reads as follows:

"Defendants object and except to that portion of the court's charge which instructs the jury as to the measure of damages wherein the court charges as follows: 'you may also take into consideration reasonable and necessary hospital and medical bills incurred up to the present,' for the reason that said instruction assumes that medical bills have been incurred and as such constitutes a comment upon the weight of the evidence."

According to the transcript it appears that the charge given contained the following wording:

"You may also take into consideration reasonable and necessary hospital and medical bills, if any, incurred up to the present."

The instruction was not subject to the criticism directed against it and the objection was probably directed against a preliminary rather than the final form of the charge. In their discussion under this point appellants suggest certain additional defects in the charge, but fail to point out by references to the record wherein these criticisms were called to the attention of the trial court. It is well settled that a defect in a charge is not available as a basis for a reversal unless the record shows that the trial judge was given an opportunity to remedy the defect or correct the mistake. Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Com.App., 7 S.W.2d 521; Gonzales v. Flores, Tex.Civ.App., 200 S.W. 851. Appellants' eighteenth point is overruled.

As hereinabove pointed out, appellants' nineteenth and twentieth points have been waived.

■ By their twenty-first and twenty-second points appellants contend that the judgment should be reversed because of improper remarks made in the course of argument to the jury by one of the attorneys for appellee. It is asserted in the brief that said attorney, referring to the defendant K. M. Fisher, said: "And, by the way, I haven't seen much of him around here either,—coming in and out of the court room." Appellants also claim that they were prejudiced by counsel's reference to a pleading which had been received in evidence. The attorney, according to appellants, stated in this connection, that "it looks to me like they were trying to get this jury not to give this man over $20,000.00." It is urged that from said statements it could be improperly inferred that Fisher was not interested in the case because he was covered by insurance and that by making reference to the matter of a $20,000.00 verdict, counsel was inviting the jury to ignore the instructions of the court. We are of the opinion that appellants' points disclose no reversible error. It is not shown that an objection was made to the argument at the time it was made or that an instruction of the court was requested with reference thereto. In fact, appellants' brief contains no reference to a bill of exception or any other part of the record other than the motion for new trial. In the case of Weyel v. Lower Colorado River Authority, Tex.Civ.App., 121 S.W.2d 1032, 1035, wr. ref., it was said:

"The only remaining question which is urged relates to argument attributed to appellees' counsel before the jury. No bill of exception was preserved to the argument complained of, and the only record presented with reference to it is in appellant's amended motion for a new trial, and the order of the trial court in overruling that motion. It is now well settled that in

the absence of a bill of exception, approved by the trial court, such matters are not properly presented for review. East Texas Oil & Refining Co. v. Simmons, Tex.Civ. App., 105 S.W.2d 507, 510, writ refused; Chandler v. Wiemers, Tex.Civ.App., 4 S.W. 2d 569, writ refused; 3 Tex.Jur. § 306, p. 432; § 344, p. 490; § 407, p. 581."

Appellants' twenty-first and twenty-second points are overruled.

By their twenty-third point, appellants urge that the amount of damages awarded by the jury is manifestly excessive. At the time of the trial, in April of 1948, appellee was forty-one years of age and had a life expectancy of twenty-seven and one-half years. His wages as a police officer were $200 per month, and there was a reasonable prospect of an increase in pay due to additional length of service and experience. While the evidence discloses that appellee has suffered and will continue to suffer severe physical and mental pain and anguish, we need not discuss this matter in detail nor consider the matter of probable future medical and hospital bills, for the reason that the evidence, when viewed in the light consistent with the jury's findings and most favorably to appellee, is sufficient to support the conclusion that Leach was permanently and totally disabled. The evidence indicates that Leach suffered two major injuries, one to his spine and the other to his head. There is medical testimony to the effect that Leach received a partial if not complete nucleation of an intervetebral disc. One medical expert testified that if Leach was suffering from a ruptured disc, this condition could probably be remedied by a surgical operation which would cost about $874.00, considering necessary hospital expenses. The success of the operation is necessarily a matter of probability.

Dr. John C. Parsons, the Police Department doctor, testified rather fully as to Leach's head injury. The doctor stated that he had treated Leach and that part of his head as "big as the end of the fist was mashed," that Leach was under sedatives for a period of about two weeks after the accident; that he complains of headaches, mostly in the back of his neck right at the base of the skull, but sometimes nearer the top of his head; that when he has these headache attacks, if he does not get off his feet and lie down, he will somtimes pass out and become unconscious, and that Leach has not been able to sleep more than three hours per night without the use of sedatives. Dr. Parsons was of the opinion that although Leach had not suffered a fracture of the skull, he had sustained a severe brain injury.

Dr. Parsons testified as follows:

"Q. Can you have a very severe injury without a fracture? A. At times you can have a terrific injury without any fracture whatsoever, the brain completely torn to pieces.

"Q. What could you compare that to? How do you explain that? A. The skull, as we know, is a solid bony substance, and the brain is a soft, comparatively jellitinous substance incorporated in a solid mass of bone. One of the worst head injuries is a concussion. It is synonymous with a bowl full of jello, you can hit the bowl and the jello will shake and crack itself without any injury to the bowl. And many of these brain injuries we find are due to a blow on the head, in which the brain is agitated and the blood vessels of the brain substance are broken, just like a piece of string they are broken, and a hemorrhage is expelled into the brain substance itself, and the pressure of the blood into the brain substance causes a degeneration of that area. It all depends upon the area of the brain that is injured. Generally speaking, in the back part of the brain is the motor part, that causes one to be able to move and to walk, and controls the impulse of moving. The middle section of the brain is the thought center, that controls your speech and hearing and various and sundry senses you have. And the front part of the brain has to do with personality, some with vision, some with a person's activities, such as that a person can be a very bright individual and have a brain injury to the frontal part of his brain and become a very dull, stupid type of person, and yet be able to navigate and ambulate around.

"Q. Have you arrived at any conclusion from the history and the treatment you

have given this man, and your observation of him, as to what, if any, he may have had to his head? A. Definitely there is some, due to this fact: the patient Leach has developed an increased amount of vertigo and unsteadiness. He has fainted two or three times, one time in my office. In fact, there have been a number of times, but one time in my office. He was in the office, he was sitting down and he raised his head up and stood up and was affected with the vertigo, a state of dizziness is what vertigo is, and he completely fainted on the couch and slumped to the floor, and he was lifted up on the couch and was given ammonia and stimulants of that nature, and was revived, and was very weak afterward. That has been a constant history now for the period of his injury. Most brain injuries that you will, if they are acute a patient is in shock or unconscious. These delayed brain injuries will come on in a slow insidious way, such as vertigo, loss of memory, loss of personality, loss of use of some part of the body, a leg or hand, or weakness thereof."

Dr. Parsons testified that considering Leach's symptoms there was a definite and distinct possibility that apoplexy, paralysis or insanity might develop.

Appellee's evidence shows that he has been attempting to work and has been unable to perform the service required of him by the Police Department of the City of San Antonio, even though he has been shifted to a desk job because of his physical condition. In view of all these circumstances, we are of the opinion that the jury could reasonably have concluded that Leach had been permanently and totally incapacitated. It therefore can not be said that the award of damages is manifestly excessive. We overrule appellants' twenty-third point.

We also overrule appellants' twenty-fourth point wherein it is asserted that the evidence shows as a matter of law that the appellee was guilty of negligence which proximately caused his injuries. The issue of proximate cause is generally one for the jury, and it is so in this case. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332.

By their twenty-fifth point, appellants contend that the judgment must be reversed because of misconduct on the part of the jury.

In Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464, the Supreme Court pointed out that the prior rule of reasonable doubt applicable to jury misconduct cases, Moore v. Ivey, Tex.Com.App. 277 S.W. 106, has been abolished by the adoption of Rule 327, R.C.P., and that the burden of showing probable injury rests upon the party complaining of the misconduct. The question of whether or not any particular alleged act of misconduct actually occurred is a matter to be determined by the trial court under the rules generally applicable to fact issues: "If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court." [140 Tex. 510, 169 S.W.2d 464.]

Appellants secured identical affidavits from two of the members of the jury and attached the same to their motion for new trial. In these affidavits it was stated that: "The first vote taken was whether we should give Leach any money. This vote was taken by a show of hands and we all voted in favor of it. We then voted on how much to give Leach by writing down our ideas on pieces of paper. The amounts varied, so we took another ballot and this time we all agreed on $30,000. Then we proceeded to answer the rest of the questions." Upon hearing of the motion for new trial, eleven of the former jurors testified. One hundred thirty-nine pages of the statement of facts are occupied by the testimony adduced at this hearing. There was testimony which tended to support the allegations contained in the affidavits. Likewise, there was testimony which contradicted said allegations in certain particulars. For instance, the foreman of the jury testified that when the jurymen first went into the jury room there was quite a little discussion of different matters, such as the credibility of witnesses and as to who was in the wrong, the motor cycle

policeman or the cab driver. Various jurors mentioned sums of money which they thought appellee should recover, if he were entitled to recover at all. According to this witness, there seems to have been a rather free discussion with each juryman discussing or bringing up any matter that occurred to him. However, after a while the foreman said to the members of the jury: "Well, gentlemen, what we will have to do is just disregard this (matter of the amount of recovery) and start and answer each question individually and vote on each question yes, or no." This procedure was carried out and each question voted on in turn by a raise of hands and no further mention of damages was made until the jurors finally reached that issue which was the last one submitted. Each question was considered separately upon its merits. The record contains other testimony similar to that given by the foreman. From this evidence, we think it is readily apparent that the trial court could have concluded, and we presume that he did conclude that no overt act of misconduct occurred in the jury room. It is not misconduct for members of a jury to enter into a general discussion as to which party may have been in fault, or to discuss the extent of injuries sustained by one of the parties, prior to the time the first issue is called up for discussion and vote by the foreman. From the testimony, the trial court could reasonably conclude that there was no agreement or understanding among the members of the jury to answer the issues submitted to them so as to bring about a judgment in favor of appellee. Debes v. Greenstone, Tex.Civ.App., 260 S.W. 211; Buckalew v. Butcher-Arthur, Inc., Tex.Civ.App., 214 S.W.2d 184.

It is also urged that the jury in this case acted with unseemly haste and reported a verdict in little more than an hour. This contention is fully answered by the opinion of Judge Fly in the case of Gulf, Beaumont and Kansas City Ry. Co. v. Harrison, Tex.Civ.App., 104 S.W. 399, wherein it was pointed out that the law does not prescribe the length of time that a jury shall remain out in consideration of their verdict. In certain instances the members of the jury may have made up their minds about the issues of the case by the time the evidence is in and arguments of counsel have been completed. Under such circumstances a verdict may quickly be agreed upon. Promptness alone, in the absence of other circumstances evincing passion or prejudice, can not be made the basis of a reversible error. We overrule appellants' twenty-fifth point.

Having disposed of all appellants' points and being of the opinion that none of them discloses a reversible error, an affirmance of the judgment appealed from will be ordered.

Affirmed.