## EAST TEXAS MOTOR FREIGHT LINES v. STERRETT et al.

### No. 14237.

Court of Civil Appeals of Texas. Dallas.

June 23, 1950.

Rehearing Denied Aug. 1, 1950.

254

Leachman, Matthews & Gardere, and Henry D. Akin, all of Dallas, for appellant.

Mullinax, Wells & Ball, of Dallas, for appellees.

CRAMER, Justice.

Appellee Sterrett instituted this suit against appellant for damages for personal injuries received by him when one of appellant's trucks, while backing up to the dock of Gillette Motor Transport in Dallas, rolled forward, struck his left side or back, and pushed him down. Appellee, at the time, was steam-cleaning a motor on another truck. He alleged that at the time he had syphilis in a quiescent, dormant or inactive stage, but as a result of such accident the disease was caused to become active and developed into a disabling condition, and was caused to spread throughout

his body, in particular to his brain, eyes, and spinal cord. Appellee's employer carried workmen's compensation insurance and the carrier of such insurance intervened, claiming subrogation to appellee Sterrett's rights up to the amount of $730 paid as compensation and $193 paid out as medical expenses on their policy, plus reasonable attorney's fee.

Appellant denied that its truck struck appellee; also pleaded specific acts of contributory negligence on part of appellee as proximately causing his injuries. The jury found negligence on part of appellant's driver proximately causing appellee's injuries and disability; found against appellant on contributory negligence; that the collision was not an unavoidable accident; found $8,000 for diminished earning capacity, physical pain, and suffering, plus $750 for medical expenses. On this verdict the trial court entered judgment for appellee for $8,750, plus interest, costs, etc., from which action appeal has been properly perfected and the cause is now regularly before this Court.

Appellant briefs six points of error, in substance: (1) Argument of appellee's attorney asking the jury to place themselves in plaintiff's place; (2) argument of appellee's attorney that, drawing from his own knowledge, plaintiff's employer was keeping plaintiff on, out of pure sympathy for him; (3) jury misconduct, in that the jury during their deliberations discussed whether Sterrett's employer would fire him after the trial,—there being no evidence to support such discussion, such evidence, by the court's ruling, having been expressly excluded; (4) the admission over appellant's objection of evidence by lay witnesses to the effect that they could not use appellee in their employment in his then physical condition; (5) in permitting appellee to recover for an aggravation of a simple syphilitic condition; (6) in entering judgment for highly excessive damages.

The first point is contained in appellant's bill of exception No. 3, the material part being as follows:

" * * * I don't know how much a six-wheel truck and trailer weighs or how much foot energy it has at two miles an

hour—I think the driver was getting ready to stop, anticipating going backward, I believe that is why he was looking backward and I also believe that is why he wasn't paying any attention to Mr. Sterrett. He was hunting a place to put that truck instead of watching down there. I believe he was coming down there at a slow rate of speed, else he would have killed the man. Now, I ask you to put yourself in Mr. Sterrett's position * * *

"Mr. Gardere: I object. The jury is not in Mr. Sterrett's position, or mine either.

"The Court: I sustain the objection.

"Mr. Gardere: I ask you to instruct the jury not to consider that statement.

"The Court: I so instruct the jury.

"Mr. Mullinax: I apologize. I didn't mean it that way. I merely ask you to take a position on that rack that afternoon where Mr. Sterret was. When you have put yourselves there, imagine, gentlemen, you are a man with a seventh grade education, that knows his job; it is a hard, common labor kind of job; he likes to do it and is glad of his employment and is glad of the fact that his employers like him; he wants to stay with his job; he is making money he is satisfied with. That kind of a man is suddenly hit by the truck and is thrown down. And I tell you a truck, at half a mile an hour, of that weight, would make you feel like your head was popping off your shoulders. Mr. Sterrett said it gave him that kind of feeling, in his deposition, and in his pleadings and on the witness stand he said he had that kind of feeling from it, and he also said he was bruised across his back. But the important thing I want to point out is this—he was not a man looking for a lawsuit. He got up and those were the things that affected his consciousness at that time, that there were bruises made, and his head felt like it was coming off of his neck. Now I ask you, if you had a billiard cue with a heavy end and hold it on one end and hit with the metal, where is the weight going to be experienced most. Out there on the heavy end. So I am sure he would experience that kind of feeling; but he got up and went about his business. I am sure he had no more thought in his mind about a lawsuit or about losing a day from his work or getting flat on his back, certainly, than that driver did or anyone else."

▇▇▇ Appellee counters the point by asserting that the argument in question arose while he was discussing the circumstances leading up to the tort, from the view of both parties, and to justify the conduct of appellee in making no immediate outcry, and not in an appeal on the damage issue; that he had every right to ask the jury to step into the circumstances producing the particular tort and determine the reasonableness of the acts done and the judgment exercised by the various parties; that only when the jury is asked to take a prejudicial point of view does it become improper; that any error in the argument was cured by the instructions; that after he had discussed the tort from the viewpoint of the driver, he then, at the time of the objection, commenced to discuss it from the position of appellee, and that when the court passed on the objection she assumed that he was using such words for an improper purpose; and, further, that since no objection to the argument was made after the court's ruling, as shown by the bill, such fact deprives appellant of the right to complain of same now.

The rule, as we see it from numerous cases on the question, is that if the argument complained of is an appeal to the jury to place themselves in the position of the injured party at the time of the accident, in reference to his physical condition, or as an appeal for a large amount of damages, it is improper. And if, in the opinion of the reviewing court from the record as a whole, such error was not cured by the court's instructions to disregard it, then the judgment below should be reversed.

There is always the presumption that improper and prejudicial argument is harmful and the burden is on appellee to show that the verdict was not affected thereby.

Applying the rules to this case, the argument first made was improper, was objected to, and such objection sustained. In our opinion, if nothing of a similar nature had occurred afterward, this cured the error up to that point. However, immediately there-

after additional argument shown in the bill was made. We do not believe, under such circumstances, that it was necessary for appellant to again make objection to save the error. Such objection, with court's action thereon for a second time, would merely have emphasized the point appellee desired to bring before the jury. Under the circumstances shown by the bill we sustain appellant's first point, which necessitates a reversal of the judgment below. For a general statement of the rule and quotations from the authorities, see 41 Tex.Jur., Trial—Civil Cases, sec. 80, p. 806, and 9 Ten Year Supp., Tex.Jur., p. 261.

Since there will be another trial of this case we pretermit a discussion of the other questions raised, except insofar as is necessary to the new trial. Point 2 evidences error in that portion of same wherein appellee's attorney injects his own experience. The other portion, with reference to appellee's employer keeping him on out of pure sympathy, was proper as his legitimate deduction or inference from the evidence.

The jury probably will not discuss matters not in evidence on a retrial and we will therefore not discuss point 3. A lay witness may testify as to what he, by observation, saw plaintiff doing, his actions, movements, etc., on the job, and, after having given a shorthand rendition of the facts, may state whether or not (if he is an experienced employer and experienced in the same line of work as appellee) he would employ appellee in his apparent physical condition; Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, error refused, n. r. e.; McCormick and Ray, Texas Law of Evidence, p. 819; also whether or not appellee could perform light or heavy manual labor; Missouri, K. & T. Ry. Co. v. Gilcrease, Tex. Civ.App., 187 S.W. 714, error refused. Point 5 raises the question of the propriety of a recovery for an aggravation of a former syphilitic condition. It is settled, we think, that such recovery for an aggravation of a prior diseased condition is allowable when such aggravation results directly and proximately from actionable negligence; the recovery, of course, being limited to the increase of ill effects directly

and proximately resulting from the injury. The fact that the prior physical condition rendered appellee more susceptible to harmful results from the injury does not defeat or lessen liability on part of appellant. 13 Tex.Jur., p. 171, Damages, sec. 80; 3 Ten Year Supp., Tex.Jur., p. 709, and cases there cited. Point 6, raising excessiveness of the verdict, we think should be sustained, but since the evidence and amount of the jury verdict may be different on another trial, the point need not be further discussed.

For the error pointed out the judgment below is reversed and the cause remanded to the trial court for another trial.

Reversed and remanded.