**Westall WILLIAMS, Appellant,**

v.

**Clifford PRICE, Appellee.**

No. 15854.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 29, 1957.

Rehearing Denied Jan. 10, 1958.

T. B. Coffield, Bowie, Strasburger, Price, Kelton, Miller & Martin, and Hobert Price, Dallas, for appellant.

Jones, Parish & Fillmore, Wichita Falls, Peery & Wilson, Kearby Peery, and Tom D. Glazner, Wichita Falls, for appellee.

BOYD, Justice.

Appellee Clifford Price recovered judgment against appellant Westall Williams for damages for injuries sustained by himself and his wife in a collision on Highway 82 between a pickup truck in which they were riding and a Buick automobile driven by appellant.

The jury found that appellant drove his car on the occasion in question at a negligent rate of speed; that he drove it in excess of 60 miles per hour; that he failed to timely apply his brakes; and that each of such acts was a proximate cause of the collision. The jury also found that immediately before the collision appellee drove the pickup across the highway at a slower rate of speed than an ordinary prudent person would have driven under the same or similar circumstances, but that

such conduct was not a proximate cause of the collision.

By his first group of points appellant contends that appellee's conduct in driving across the highway at such slow rate of speed was a proximate cause as a matter of law. After carefully considering a rather lengthy record, we have reached the conclusion that this contention must be overruled.

About 1:00 P.M., appellee, his wife, and her brother were traveling east in the pickup; appellee desired to stop at Wagonseller's store, which was about 60 feet north of the north line of the paved portion of the highway; the pavement was 24 feet wide; appellee signaled for a left turn, but drove to his right and stopped, with the right wheels of the pickup, and probably the left wheels, off of the pavement; a car was immediately behind him, going east; this car stopped behind and did not pass the pickup; after stopping, and again signaling a left turn, appellee made practically a right angle turn to his left and proceeded slowly across the highway toward the store; appellant's car was going west, and collided with the pickup at a point from 7 feet to 27 feet north of the north line of the pavement, according to different witnesses.

There is an incline to the east from the point of impact, and at 1,210 feet east the road is 14½ feet higher than it is in front of the store. That elevation is maintained for about 200 feet to the east. From the front of the store one can first see a car approaching from the east when it is 1,376 feet away.

Appellee testified that as he shifted into low gear to make the turn, no car was in sight to the east, but as he was making the turn and when the front wheels of the pickup were on the south side of the pavement he saw appellant's car topping the hill to the east; he watched the car until the pickup had crossed the pavement, at which time the car was some 200 or 300 yards away; he apprehended no danger whatever in making the crossover; he estimated the speed of the car at from 50 to 60 miles per hour; after he had crossed the pavement and was heading to the west and "fixing to stop," he saw appellant's car about 60 feet away, "And he was—appeared to be coming sideways, or, anyhow, he wasn't coming real straight." The impact followed immediately.

Appellant's witness Smith, a highway patrolman, testified that tire and skid marks made by appellant's car extended approximately 150 feet up to the point of impact, and that for about 42 feet of that distance they were off of the pavement; that the pickup was knocked 90 feet from the point of impact. His expert opinion was that appellant was driving in excess of 60 miles per hour.

Partain testified that he was driving west and that appellant's car passed him about 3 or 4 miles east of the store; witness was driving 70 miles per hour, and appellant passed him "like I was setting still;" he estimated appellant's speed to be from 85 to 90 miles per hour. After the collision, the pickup was lying on its side. Appellee and his wife were severely injured, and his brother-in-law was thrown from the pickup and killed. A witness testified that appellant said to him, shortly after the date of the accident, " 'Well, I guess it was my fault. I guess I was driving too fast, and when I applied my brakes up near the sign board, which is along there,' he says, 'my car skidded on loose gravel and I slid into the pickup sideways.' "

Appellant strongly relies on the holding in Burton v. Billingsly, Tex.Civ.App., 129 S.W.2d 439, 441, writ refused, as supporting his contention that the slow rate of speed at which appellee crossed the highway was a proximate cause as a matter of law. There was an instructed verdict for the defendant, which was sustained. In our opinion, the facts in that case were not such as to make the holding conclusive here. There, Burton had been going east

and made a left-hand turn near the center of a block. As he was angling to his left, he saw Cook's car 276 yards to the east, and coming west at a very high rate of speed. Upon reaching the point where he intended to make a sharp left turn, Burton again observed Cook's car, which was then approximately 130 to 150 feet from him. He testified that Cook had not reduced his speed and was still going at a "teriffic" rate of speed. After observing Cook's car the second time, Burton glanced in his rear-view mirror to observe the traffic to his rear and paid no further attention to Cook because, he said, he thought Cook surely would reduce his speed before reaching him. The court said that it was inescapable that Burton knew the collision would occur unless Cook reduced his rate of speed, and that "It is conclusive from the record that if appellant had stopped, which he testified he could have done within two or three feet, and waited the two or three seconds that would have been necessary for Cook to pass before attempting to cross the north side of the street, the collision would not have occurred."

■ In the case at bar, the evidence is materially different from that in Burton v. Billingsly, supra, and it must be considered in the light most favorable to the jury's finding. Here, the approaching car was more than 1,376 feet away when appellee started across the highway. It was not visible on account of the hill. Appellee saw it come over the hill, at least 1,210 feet away. He watched it until he had crossed the paved portion of the highway. At that time it was some 200 or 300 yards away, according to appellee's estimate. He was "fixing to stop" near the store when he observed the car again. This time it was about 60 feet away, and it appeared to him that it was coming in "sideways." He then for the first time realized the danger.

■■ To be a proximate cause of the collision, appellee's slowness of speed in crossing the highway must have been such that an ordinarily prudent man would rea-

sonably have anticipated that his vehicle would be struck after having successfully negotiated the highway and entered the area between the store and the pavement. Whether the element of foreseeability existed was for the jury. We think that whether appellee's lack of speed was a proximate cause of the collision was a fact question, and that the jury's finding is controlling. Brown v. Winn, Tex.Civ.App., 176 S.W.2d 595, writ refused; Phelan v. Schneider, Tex.Civ.App., 146 S.W.2d 244, writ refused.

■ Appellant's other group of points relates to the manner in which the court submitted his theory of the negligence of appellee in starting his stopped vehicle and in crossing the highway. Appellant pleaded that appellee violated Article 6701d, Vernon's R.C.S., which provides that no person shall start a vehicle, or turn a vehicle on a roadway, until such movement can be made with safety. Appellant requested issues inquiring if appellee started his automobile, and turned his automobile to his left upon the roadway, when such movements could not be made with safety. These issues were refused, and the court inquired of the jury, over appellant's objections, whether appellee started his vehicle, and moved to his left upon the roadway, when an ordinarily prudent person would not have done so under all the facts and circumstances in evidence. The answers were favorable to appellee.

We think the court submitted these issues fairly and properly. We cannot conceive it to be the law that every time a started or turned automobile is struck on a public road its driver is guilty of negligence per se simply because he did not start or turn the vehicle "with safety." If that be the law, such a driver establishes a complete defense to his own lawsuit when he shows that he received the damages for which he sues. It seems that in applying this statute the prudent driver test must be used.

We think there is authority for our position. Similar statutes have been so construed by our courts, and the courts of other jurisdictions. Phelan v. Schneider, Tex.Civ.App., 146 S.W.2d 244, writ refused; Dallas Ry. & Terminal Co. v. Black, 152 Tex. 343, 257 S.W.2d 416; Missouri-Kansas-Texas Railroad Company v. McFerrin, Tex., 291 S.W.2d 931; Heiny v. Pennsylvania R. Co., 221 Ind. 367, 47 N.E. 2d 145; Dommer v. Pennsylvania R. Co., 7 Cir., 156 F.2d 716; Pearson v. Baltimore & Ohio R. Co., 7 Cir., 200 F.2d 569; Smith v. Clark, 187 Va. 181, 46 S.E.2d 21; Gendron v. Glidden, 84 N.H. 162, 148 A. 461; Wilkinson v. Marcellus, 51 Cal.App.2d 630, 125 P.2d 584; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 2, p. 430, sec. 1121; Cooley v. Baker, 231 N.C. 533, 58 S.E.2d 115.

In Missouri-Kansas-Texas Railroad Company v. McFerrin, Tex., 291 S.W.2d 931, 936, in construing Article 6701d, sec. 86, which provides that when a person driving a vehicle approaches a railroad crossing, he shall stop within 50 feet but not less than 15 feet from the nearest rail and shall not proceed until he can do so safely when an approaching train is plainly visible and is in hazardous proximity to such crossing, the court said:

"It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless under all the attendant facts and circumstances it

can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train, was hazardous."

 The statute here involved is a part of the Uniform Traffic Code, which had previously been adopted in other states, and construed by their courts. Our conclusion finds support in some of those holdings. Moreover, statutes adopted from the laws of a sister state will ordinarily be given the construction in Texas which they had received in the jurisdiction from which they were borrowed. Missouri-Kansas-Texas Railroad Company v. McFerrin, supra; 39 Tex.Jur., p. 264, sec. 140.

All of appellant's points are overruled, and the judgment is affirmed.