**MERCHANT'S FAST MOTOR LINES, INC., Appellant,**

v.

**J. R. LANE et al., Appellees.**

**No. 17019.**

United States Court of Appeals
Fifth Circuit.

Sept. 16, 1958.

Rehearing Denied Nov. 21, 1958.

Nelson Scurlock, Rawlings, Sayers, Scurlock & Eidson, Fort Worth, Tex., for appellant.

Joe H. Foy, Earl W. Smith, San Angelo, Tex., H. O. Woodward, Coleman, Tex., Hardeman, Smith & Foy, San Angelo, Tex., for appellees.

Before RIVES, JONES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case concerns an automobile collision between a lead vehicle, making a left turn, and an overtaking vehicle. Appellant's main argument on appeal is pointed at special issues the district court submitted to the jury.

Peggy Lane was injured in a collision between her father's Pontiac passenger car and a tractor and semi-trailer truck (43 feet long) driven by McManus, an employee of Merchant's Fast Motor Lines. Ward Lane, Peggy's young brother, was driving the Pontiac at the time of the accident. J. R. Lane, as next friend of his minor daughter, Peggy, sued for her injuries. He sued also for damages to his car and for past and future medical expenses for Peggy. On special issues, the jury found both drivers negligent. It assessed damages for Peggy in the amount of $30,000. The jury allowed Lane no damages for his automobile or for medical expenses, on the ground that Ward was on a mission for his father at the time of the accident. Merchant appealed.

I.

The collision occurred at or near the intersection of Walnut and San Saba streets in the town of Coleman, Texas at about a quarter past four in the afternoon of April 18, 1956. The Lane children frequently used the family automobile to go to and from school. Ward, then fourteen years old, had the usual driver's license. Peggy, then sixteen, had a "learner's permit" and was not allowed to drive by herself. At the time of the accident Ward was bringing Peggy and a younger brother, Richard, home from school. Peggy was in the front seat with Ward.

Both vehicles were going east, on Walnut. The Pontiac was behind the truck. Both stopped at a red light at the intersection of Walnut and Colorado streets. The next intersection is Walnut and San Saba. Just after leaving Colorado, McManus, the truck driver, saw the Pontiac in his rear view mirror. He saw the car again when he was 125 to 150 feet from San Saba. After the truck and car had gone about a third of the block, Ward swung out into the left lane intending to pass the truck. He pressed down the gas pedal. The two vehicles continued alongside. As they neared the intersection, the Pontiac reached the front end of the trailer. At this point, without any warning signal, the truck turned left in front of the Pontiac. That is the Lanes' story. McManus says that he did signal and that the automobile sideswiped his truck. Ward veered to the left. The truck struck the car. The car, out of control, crossed the intersection, jumped the curb, and hit a house. Peggy was thrown through the windshield.

■■■ The evidence is conflicting as to whether the truck driver kept a proper lookout and whether he signalled for a left turn. There is disagreement as to the point of collision. Was it in or near the intersection? There is disagreement, of course, as to whether the car sideswiped the truck, or the struck struck the car's right, rear fender. We shall not re-try the facts; that is for the jury. On the record, we cannot find any error in the jury's findings.

II.

Special Issue No. 1 in the court's charge reads as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that at the time of the collision in question, Louis D. McManus, the driver of defendant's truck tractor and semi-trailer, was guilty of negligence in any of the following respects:

"[a] That said McManus prior to the collision in question failed to keep a proper lookout as that term

is defined, in driving along Walnut Street in the City of Coleman, Texas, or

"[b] That said McManus turned his vehicle from a direct course and moved his vehicle left upon a roadway at a time when such movement could not be made with safety, or

"[c] That said McManus made a lefthand turn without first signalling his intention to do so?

"Answer: 'Yes' or 'No'."

Appellant objects to paragraph b. Aplant argues that the interrogatory does not inquire as to what specific act or omission of the driver was negligent; that it misleads the jury, since it suggests that the mere fact that the accident occurred leads the jury to think that there was negligence on the part of the truck driver.

The interrogatory virtually tracks the language of Section 68(a) of Article 6701d, Vernon's Annotated Texas Civil Statutes. This reads, in part, as follows:

"No person shall * * * turn a vehicle from a direct course or move right or left upon a roadway unless and *until such movement can be made with safety.* * * *"

■■ In itself there is nothing improper in charging a jury in the language of a statute, when one of the issues in the case is whether the statute was breached. In Swann v. Wheeler, Tex.Com.App.1935, 126 Tex. 167, 86 S.W. 2d 735, 737, the Court said: "It appears to be the rule that when negligence is predicated upon the failure to comply with some statutory rule of conduct, or upon a violation of some penal statute, the issue of whether or not the statute has been complied with or violated should be submitted in the language of the statute itself." Of course, the usual rules cannot be circumvented. "The law is that interrogatories must put only questions of fact from which a legal proposition may be deduced." Carpenter v. Baltimore & Ohio Railroad Co., 6 Cir., 1940, 109 F.2d 375, 379. "If the question is a mixed question of fact and law, it may be submitted only if the jury is instructed as to the legal standards which they are to apply." Jackson v. King, 5 Cir., 1955, 223 F.2d 714, 718.

The predecessor of Section 68(a), Article 6701d was Article 801(K), Vernon's Annotated Penal Code, reading, in part, as follows:

"The person in charge of any vehicle upon any public highway before turning, stopping or changing the course of such vehicle shall see first that there is sufficient space for such movement to be made in safety * * *."

Brown Express, Inc., v. Henderson, Tex. Civ.App.1940, 142 S.W.2d 585 (error dism. judg. cor.) and Fisher v. Leach, Tex.Civ.App.1949, 221 S.W.2d 384 (error ref., N.R.E.) approved special issues couched in the language of Article 801(K).

In Bryant v. Hall, 5 Cir., 1956, 238 F. 2d 783, 787, this Court approved a charge quoting a Georgia statute to the jury that is similar to the Texas statute. In that case Bryant's dump truck was ahead of Mrs. Hall's car. As Mrs. Hall drew near the Bryant truck she began turning into the left traffic lane with the intention of passing the truck. She did not know that there was a road entrance ahead. The truck driver, without any warning, turned left directly into the path of the car. One of the assignments of error on appeal was that the court confused the jury in its charge in quoting the Georgia statute:

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 68–1644, to turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. * * *"

The trial court instructed the jury:

"The effect of this law is to place the duty upon the lead vehicle to determine that the turn from the highway into a private road or driveway can be made with reasonable safety before attempting to make such a turn."

This Court upheld the instruction.[1]

Appellant attempts to distinguish the Bryant case on the ground that there the trial judge directed the jury that the effect of the quoted statute was to place a duty upon the lead vehicle to determine whether the turn could be made. Appellant argues that since the specific element of lookout is absent from paragraph b of Special Issue No. 1, the Bryant decision is inapplicable. It is argued that paragraph a refers specifically to lookout and paragraph c specifically to a warning signal; therefore, paragraph b must refer to something else, and has the effect of making the jury believe that McManus was negligent because there *was* an accident.

■ This argument might be more persuasive, if paragraph b stood by itself. It must be read, however, as an integral part of Issue 1 along with two other integral parts, paragraphs a and c. As we read it, and, as the jury read it (we think), there are three elements of negligence in a lead vehicle turning left into the path of an overtaking vehicle: (1) lack of proper lookout (paragraph a); (2) lack of a proper warning signal (paragraph c); and the necessary link between the two, (3) the time when the left turn is made (paragraph b). The driver

of a lead vehicle may fail to keep a proper lookout and may fail to signal a left turn. But unless these omissions are related to the time when he is turning and a vehicle is overtaking him, it cannot be said that they are acts of negligence as to a particular following vehicle. Giving Issue No. 1, as a whole, a down to earth construction, we cannot believe that the jury was misled: Paragraph b asks the jury to make a finding on the essential and specific element of *time of turning* in relation with *lookout* and *signalling*.

■ What is important is that the jury be instructed on the legal standards to apply in determining issues of fact. Jackson v. King, 5 Cir., 1955, 223 F.2d 714. In Feldmann v. Connecticut Mut. Ins. Co., 8 Cir., 1944, 142 F.2d 628, 631, the Court invalidated the charge because it "made no explanation of what concept or standard the jury was required to employ in attempting to answer the question". Here, the able trial judge gave careful definitions of "negligence", "proper lookout", and "preponderance of evidence".[2] In Special Issue No. 1, the court asked the jury to examine the circumstances existing at the time the motorist must make his decision to turn. The jury must then decide whether a prudent person would have turned his vehicle *at that time*.

It seems to us that the charge attempts to make plain to the jury that the duties imposed by the statutes are conditional; the charge is designed to prevent the jury concluding that the duties imposed by the statute are absolute or that the failure to observe them is negligence per se. The charge instructs the jury to

---

1. " * * * Moreover, under Georgia Code, Section 68-1647, it was also the duty of the lead vehicle to determine that the turn from the highway could be made with reasonable safety. The standard of care thus imposed upon the truck driver required his being charged with that which he could have discovered in the exercise of ordinary care, and it was for the jury to decide whether he knew *or should have known,* and realized *or should have realized* appellee's dangerous situation in sufficient time to avoid the collision."

2. " 'Preponderance of the evidence' means the greater weight or degree of credible evidence in the case.
    " 'Negligence' is a failure to exercise ordinary care, and ordinary care means such care as a person of ordinary prudence would exercise under like or similar circumstances. * * * By the term 'proper lookout' as used in this charge is meant that type and character of lookout which an ordinarily prudent person would have kept under the same or similar circumstances."

avoid a conclusion that the driver of the lead vehicle must have been negligent or the accident would not have occurred. The instructions are in line with recent holdings of the Texas courts that in applying the statute the prudent driver test must be used: Missouri Kansas-Texas Railroad Co. of Texas v. McFerrin, Tex.1956, 291 S.W.2d 931; Booker v. Baker, Tex. Civ.App.1957, 306 S.W.2d 767, 770 (writ ref., n. r. e.). Williams v. Price, Tex.Civ. App.1958, 308 S.W.2d 185 (writ ref., n. r. e.).

We hold that the charge was not erroneous.

### III.

■ We hold that there is no merit to appellant's contention that Peggy and Ward Lane were in a joint venture so that Ward's negligence should be imputed to Peggy.

■ We hold that the district court properly submitted to the jury Special Issue No. 6 permitting the jury to take into consideration future pain and suffering in fixing Peggy's damages.

The judgment is

Affirmed.

1. "The defendant excepts to Special Issue Number 1 contained in the Court's charge, in that it contains the question or issue as to whether or not the truck driver was negligent when he turned his vehicle from a direct course and moved his vehicle left upon a roadway at a time when such movement could not be made with safety. This question is too general and places too big a burden upon the defendant and permits the jury to speculate as to any act or conduct which they might consider as being negligence on the part of McManus in turning his vehicle.

"For example, if I am crossing an intersection and have a green light, and another automobile coming to the intersection, that is supposed to stop at the red light, suddenly bursts into the intersection and collides with my automobile under circumstances where I am entirely innocent of any negligence, then, in that event, it must be said that I was crossing the intersection at a time when such movement could not be made with safety, and so, in that case, with McManus, the mere fact that there was an

RIVES, Circuit Judge (dissenting).

I respectfully dissent. The form of Special Issue Number 1 quoted in the majority opinion was, I think, misleading and permitted the jury to find that McManus, defendant's driver, was negligent simply because he made a left turn "when such movement could not be made with safety." The collision of the two vehicles demonstrated that fact, i. e., the "movement could not be made with safety." The jury could easily be misled into treating that instruction as equivalent to the direction of a finding that defendant's driver was guilty of negligence. Defendant's able counsel did his best to preserve his client's rights by clearly and specifically calling to the attention of the trial court the error in the Special Issue.[1]

Rule 49(a), Federal Rules of Civil Procedure, 28 U.S.C.A., permits "a special verdict in the form of a special written finding upon each issue of fact." In this case the jury answered "yes" to an issue submitted in the *alternative:* "Do you find * * * McManus guilty of negligence in *any* of the following respects: . (a) * * * failure to keep a *proper*

accident shows clearly that the movement could not be made with safety, and the question does not ask the jury what, if anything, McManus did that was negligent when he moved his vehicle to the left side of the roadway in making a turn from Walnut Street into San Saba Street, and since McManus was turning at an intersection, at a point where he had a right to turn, and was not required to anticipate that the driver of the automobile would violate the law and attempt to pass him in the intersection, when getting over on the north side of Walnut Street, it is permitting the jury to say that for some reason, which they imagine in their own minds, that he was negligent, merely because there was an accident, and it suggests to the jury that McManus may have been negligent because the turn could not be made with safety, even *though he was entirely innocent* of any negligence prior to that time, and it is, in effect, submitting the case to the jury in one question, by asking was he, McManus, guilty of negligence in having the accident."

lookout * * *, *or* (b) * * * turned * * * left * * * at a time when such movement could not be made with safety, *or* (c) * * * made a lefthand turn without first signalling his intention to do so." The jury's verdict gave no indication of which alternative, (a), (b), or (c), it found to be true.

The conduct described in (a) ["failed to keep a proper lookout"] or the conduct described in (c) ["made a lefthand turn without first signalling"] was negligence per se. It seems to me that the plain meaning of (b), when read with (a) and (c) and the remainder of the instruction, is to define conduct which in and of itself constitutes negligence. My brothers say not. They say that: "Giving Issue No. 1, as a whole, a down to earth construction, we cannot believe that the jury was misled. Paragraph b asks the jury to make a finding on the essential and specific element of *time* of turning." I do not agree. With deference, that construction of (b) seems to me an artful and finespun one which might occur to a skillful legal mind, but not the plain and ordinary meaning of the words as a jury of laymen would understand them.

Indeed, the original brief filed on behalf of plaintiffs-appellees undertook to justify (b) as describing negligence per se.

"Section 68(a) of Art. 6701d has been held by Texas Courts of Civil Appeals to impose a specific duty upon motorists, not to turn unless the movement can be made with safety. Bergeron v. City of Port Arthur, 264 S.W.2d 769, Tex.Civ. App.1954, (error ref. N.R.E.), was a case in which the jury found that plaintiff turned when such movement could not be made with safety. The court held that such finding established negligence per se."

The contention that a violation of the statute constituted negligence per se was elaborated in appellees' supplemental brief filed May 5, 1958.

However, in a later supplemental brief filed May 9, 1958, counsel for appellees, with commendable candor, called to our attention the very recent cases of Williams v. Price [Tex.Civ.App.], 308 S.W. 2d 185, and Booker v. Baker [Tex.Civ. App.], 306 S.W.2d 767, and conceded that those cases establish "that, at least where the facts raise an issue of excuse for the statutory violation, the jury must also find that the defendant (or other party turning left) was negligent in that respect. * * * In view of these decisions our previous statements to the effect that a violation of Sec. 68(a) is negligence *per se* are probably too broad. The submission to the jury must include the element of negligence, a standard based upon the conduct of the 'ordinary, prudent man.'"

When plaintiffs-appellees' counsel themselves thus frankly concede that they misunderstood the effect of the statute, how can we justify a holding that the special issue tracking the language of the statute, without further explanation, did not mislead the jury?

My brothers cite Texas decisions authorizing the submission of issues in the language of the statute itself. Those cases are not helpful in the independent federal system of administering justice, an essential characteristic of which "is the manner in which, in civil common-law actions, it distributes trial function between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury." Byrd v. Blue Ridge Cooperative, 1958, 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953. Here we are governed by Rule 49(a), Federal Rules of Civil Procedure, and by the recent sound construction of that rule by this Court:

"This charge was clearly inadequate. Rule 49(a), Federal Rules of Civil Procedure, permits submission of special interrogatories to juries only of issues of fact. If the question is a mixed question of fact and law, it may be submitted only if the jury is instructed as to the legal standards which they are to apply."

Jackson v. King, 5 Cir., 1955, 223 F.2d 714, 718. See also, Scarborough v. Atlan-

tic Coast Line R. Co., 4 Cir., 1951, 190 F. 2d 935; Feldmann v. Connecticut Mut. Life Ins. Co., 8 Cir., 1944, 142 F.2d 628; Carpenter v. Baltimore & O. R. Co., 6 Cir., 1940, 109 F.2d 375.

The general definition of negligence by the district court (see footnote 2, majority opinion) did not remove the misleading defect from the special issue. The jury would probably still believe that the conduct described in (b) constituted negligence per se.

Convinced that Special Issue Number 1 was so misleading as to deprive the defendant-appellant of a fair trial, I respectfully dissent.