## WEYEL v. LOWER COLORADO RIVER AUTHORITY et al.

### No. 8758.

Court of Civil Appeals of Texas. Austin.

Nov. 2, 1938.

Motion for Rehearing Overruled Nov. 30, 1938.

Lawrence L. Bruhl, of Llano, Brooks, Napier, Brown & Matthews and W. F. Nowlin, all of San Antonio, for appellant.

Carlos Ashley, of Llano, Thomas C. Ferguson, of Burnet, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellee Lower Colorado River Authority.

Burford, Ryburn, Hincks & Charlton, of Dallas, for appellee Texas Power & Light Co.

BAUGH, Justice.

C. C. Mallot, as original plaintiff, brought this suit in the District Court of Llano county, to restrain the Lower Colorado River Authority (hereinafter designated as the L C R A) from erecting a high tension power line across his land in Burnet and Llano counties along the shores of Buchanan lake. Appellant Weyel was later substituted as plaintiff, and by agreement the case was transferred to the Dis-

trict Court of Burnet county. As authorized by amended Art. 3269, R.S.1925, Acts 1931, 42d Leg. p. 413, Ch. 245, Vernon's Ann.Civ.St. art. 3269, the L C R A filed a cross-action to condemn for easement purposes the strip of land here involved, being 100 feet wide, 7 miles long, and containing 48.88 acres. Weyel took a nonsuit on his application for injunction, and in answer to said cross-action appellant denied the right of the L C R A to condemn said lands, alleging that it was undertaking to. do so for the purpose of thereafter selling, assigning, and transferring same to the Texas Power & Light Company (hereinafter designated as the T P & L). Thereupon the T P & L intervened, alleging its right of eminent domain to condemn said property; that same was necessary for it in the transmission of its power from Burnet to Llano; that the construction of the Buchanan dam would inundate and destroy its existing high tension line between said two towns; that the L C R A had agreed to construct such line around and across said lake because the construction of the Buchanan dam would destroy its existing line; and prayed that in the event the L C R A be denied the power to condemn said property, that said T P & L be permitted to do so.

Trial was to a jury which, in answer to special issues, found appellant's damages to be $600. The trial court thereupon rendered judgment awarding the easement across said lands to the L C R A, denied the T P & L any .recovery, and that appellant recover his damages in the sum of $600; hence this appeal.

The first contention made by appellant is that the condemnation of appellant's property sought by the L C R A was not for a public use, nor for a purpose of its own; but that under the pleadings and proof it was shown to have been undertaken by the L C R A for the use and benefit of the T P & L, an entirely different corporation, to enable the latter to carry on its business. In this regard the facts were: The T P & L is a public utility corporation, having the power of eminent domain, then operating a high tension line between Burnet and Llano over which electric current was supplied to the public in Llano. This line was located across the lake basin formed by the construction of the Buchanan dam, and when this reservoir became filled with water would have been submerged. We are not called upon to determine whether the L C R A

had the power to condemn this T P & L property. Manifestly it could not have destroyed it without adequate compensation, a matter which would have been difficult to ascertain. It therefore chose the more practicable horn of the dilemma, and undertook to furnish and relocate such transmission line up, across, and around the lake, so as not to destroy nor interfere with the T P & L's business, which was itself a public service. This was done by agreement between the L C R A and the T P & L.

 We shall not undertake to discuss the numerous authorities cited by appellant in support of his contention. The power of condemnation of private property is an attribute of sovereignty, and it is now settled that to sustain such condemnation its purpose must be for some public use. This power has by the state been delegated in numerous instances to governmental agencies and to private corporations where essential for them to render public services. Since the adoption of Sec. 59a, Art. 16 of the Constitution of Texas, Vernon's Ann.St.Const. art. 16, § 59a, such authority has been delegated both by general and special laws to various kinds of water districts in Texas. See 16 Tex.Jur. §§ 39 to 46, pp. 611 to 620. In each instance the exercise of such power has been so granted as to enable such district to appropriate by condemnation whatever property may be necessary or reasonably appropriate to accomplish the purposes for which the district was created. In the instant case the L C R A was created by a special act of the legislature (Acts 43d Leg., 4th C.S., Ch. 7, p. 19, Vernon's Ann. Civ.St. tit. 128, c. 8 note), and declared to be "a governmental agency and body politic and corporate, with the powers of government," etc., and the broad purposes of its creation therein defined. It was given the power in Sec. 2 (f) of said Act to condemn property of any kind "necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, * * *." Sec. 2 (i) gives said district authority "to construct, extend, improve, maintain and reconstruct, to cause to be constructed, extended, improved, maintained and reconstructed, and to use and operate, any and all facilities of any kind necessary or convenient to the exercise of such powers, rights, privileges and functions." Subd. (g) of Sec. 2 gives said L C R A authority to sell or other-

wise dispose of any property or any interest therein, acquired by it, which may not be necessary to the carrying on of the business of the district; and Subd. (n) of Sec. 2 gives the district authority to make whatever contracts may be necessary or convenient to the exercise of the powers and functions of such district.

From these provisions it is clear that the legislature did not intend to confine the L C R A's power of condemnation to property, nor to the uses thereof, which the district itself intended to use permanently in its own operation. It was authorized to do whatever was reasonably necessary and convenient to accomplish the purposes for which it was created. It cannot be gainsaid, and is not controverted, that to do so it would destroy the property of another corporation, essential to that corporation's use in rendering its public service. The people of Llano were entitled to that service uninterrupted. The only way the L C R A could avoid interference with that public service was to reconstruct the T P & L's high tension line in such location as to avoid destroying or interrupting that public service so being rendered by T P & L. The T P & L should not be compelled to itself exercise its power of eminent domain to acquire a new right-of-way easement, and construct a new line over another route, because the L C R A found it necessary, in order to carry out its purposes, to destroy the one the T P & L already had. That, we think, was duty clearly resting upon the L C R A and was just as necessary and convenient to the accomplishment of the purposes of the L C R A, and just as much authorized by the Act creating it, as was the taking of lands for its lake basin, the construction of roads necessary to build the dam, or the erection of high lines of its own in connection with the project. The reconstruction of such high tension line, therefore, in another location, and the taking by condemnation of an easement for that purpose, was not, we think, in legal contemplation, primarily for the use and benefit of the T P & L; but on the contrary was for the use and benefit of the L C R A, that it might destroy or remove the T P & L's existing line, which was necessary to the construction of the L C R A project. The erection, by condemnation if necessary, of the new line, in order to destroy or remove the old one, which presented an insurmountable obstacle to the creation of the lake, was in itself a public use for the benefit of the L C R A within the meaning of the law creating it. And it consequently becomes immaterial whether the L C R A thereafter operated this high line itself, or leased or sold it to the T P & L for that purpose, either of which it was authorized under the law to do. It did not seek to condemn said property for a private use to be turned over, to a third party for private use in compensation for private property taken from such third party, as was true in many of the cases cited by appellant, in which such power of condemnation was properly denied.

We think the instant case presents no conflict with those from other jurisdictions cited by appellant holding that one corporation has no power to condemn private property, not needed for its own use, nor essential to conduct its own business, but for the use and benefit of some other corporation. There are, however, many decisions holding that where the property condemned is for public use, and no fraud is practiced upon the owner, this can be done. See Patterson Orchard Co. v. S. W. Arkansas Utilities Corp., 179 Ark. 1029, 18 S.W.2d 1028, 65 A.L.R. 1446, and annotations thereunder. We ground our decision herein, not on such power, but on the conclusion that in condemning appellant's property for the purpose of relocating the T P & L's line, which appellee was compelled to destroy in the completion of its project, it was doing so for a public purpose of its own; and the fact that it turned the line over to the T P & L after its construction does not change the original purpose sought to be accomplished by the L C R A, and one necessary to be done in its own operation and authorized by law.

Having the power to condemn such property, and the use to be made of it being a public use, the extent of appellant's rights in the premises is to be adequately compensated. That, of course, was a question of fact and the jury awarded him $600. It would serve no useful purpose to review here the testimony as to the value of property and the extent of his damages. Suffice to say that the testimony was amply sufficient to sustain the finding of the jury on this issue.

Appellant also complains of the refusal of the court to strike out, on his exception thereto, the T P & L's plea of intervention. Under the views hereinabove expressed, and the fact that the

trial court denied the T P & L any affirmative relief prayed for, even if it were error to permit the T P & L to intervene, which we do not hold, such error was manifestly harmless.

 The only remaining question which is urged relates to argument attributed to appellees' counsel before the jury. No bill of exception was preserved to the argument complained of, and the only ·record presented with reference to it is in appellant's amended motion for a new trial, and the order of the trial court in overruling that motion. It is now well settled that in the absence of a bill of exception, approved by the trial court, such matters are not properly presented for review. East Tex. Oil & Ref. Co. v. Simmons, Tex.Civ.App., 105 S.W.2d 507, 510, writ refused; Chandler v. Wiemers, Tex.Civ. App., 4 S.W.2d 569, writ refused; 3 Tex. Jur. § 306, p. 432; § 344, p. 490; § 407, p. 581.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.