**ELOISE BAUER & ASSOCIATES, INC., Appellant,**

v.

**ELECTRONIC REALTY ASSOCIATES, INC. and Mike Gaston, Appellees.**

No. 8874.

Court of Civil Appeals of Texas, Texarkana.

Aug. 18, 1981.

Rehearing Denied Aug. 18, 1981.

David C. Kent, M. David Bryant, Jr., Hughes & Hill, Dallas, for appellant.

John H. Marks, Jr., Royal H. Brin, Jr., Strasburger & Price, Dallas, for appellees.

BLEIL, Justice.

This is an appeal from a take nothing judgment in an action to recover damages for wrongful cancellation of a real estate broker franchise contract.

Eloise Bauer & Associates, Inc. filed suit for damages for wrongful cancellation of the franchise agreement it had with Electronic Realty Associates, Inc., a real estate franchise company, against that company, and Mike Gaston, one of ERA's regional managers. Recovery was also sought for related torts. In addition, Bauer sought punitive damages and attorney's fees. ERA denied Bauer's claims and counterclaimed for breach of contract asserting that Bauer had failed to comply with the performance standards in the agreement. Market Realty, Inc., a real estate firm, intervened and claimed damages against all other parties to the suit based upon Bauer's conduct. Market Realty has not appealed from the take nothing judgment rendered against it and is not a party to this appeal.

The questions on appeal concern whether the trial court erred, (1) in entering a judgment against Bauer in light of the verdict and the evidence; (2) in the manner of submitting the case to the jury; (3) in the excluding of an exhibit from evidence; (4) in refusing to strike a petition in intervention; and, (5) in failing to render a judgment in favor of Appellant Bauer. We hold that various errors committed by the trial court require that the case be reversed, and, in the interest of justice, remanded for a new trial.

Eloise Bauer & Associates, Inc. is a Texas corporation owned by Eloise and Bob Bauer with its home office in Arlington, Texas. In 1974, Bauer decided that it would be advantageous to affiliate with a national network of real estate brokers and investigated a number of firms. Ultimately, it chose to become a member broker of ERA, of Kansas City, and signed a membership agreement in January of 1975.

At that time ERA was itself a relatively new organization with only two other member brokers in the Dallas-Fort Worth area. In the latter half of 1975 ERA sought to increase its penetration of the market place by selecting certain real estate brokers as master brokers. Master brokers were to provide leadership and services to ERA member brokers within their assigned territories and to market ERA memberships to other real estate brokers within their territory. ERA selected Eloise Bauer & Associates to serve as master broker for Tarrant County and five adjacent counties. The parties entered into ERA's form "Master Broker Membership Agreement" on January 15, 1976. By this agreement Bauer became a participant in the ERA marketing program and gained rights to certain revenues received by ERA from ERA member brokers in Bauer's territory. The agreement was of an indefinite duration, but was cancelable by ERA in the event that Bauer (1) failed to meet the agreed performance standards, (2) violated the agreement or any agreement with an ERA affiliated company, or (3) entered into bankruptcy. The only ground for cancellation urged by ERA was Bauer's failure to meet the agreed performance standards.

On the basis of the agreement, Bauer undertook its duties as a master broker and sold ERA memberships to various real estate brokers in its territory from 1976 to 1978. ERA supervised its master brokers through regional directors with responsibility for several territories. Bauer's performance as a master broker was considered above average until it began having some conflict with Mike Gaston, after he became regional director of ERA. This period of time was one of great expansion for ERA and attempts to negotiate a new agreement between Bauer and ERA were not successful. In October of 1978 ERA first complained to Bauer that it had failed to meet the $6,000.00 aggregate monthly billings performance standard as stated in the agreement. In November 1978, Bauer advised ERA that it had achieved an aggregate monthly billing of $6,300.00.

On March 8, 1979, ERA gave notice of cancellation to Eloise Bauer & Associates, Inc., stating that unless, by April 24, 1979, it complied with the performance standards

of the agreement, ERA would cancel. The performance standard referred to in the agreement was the provision regarding the $6,000.00 in aggregate monthly billings.

The issues presented principally pertain to (a) compliance with the performance standards, (b) submission of the case, (c) exclusion of evidence, and (d) failure to strike the petition in intervention. It is the question of Bauer's compliance with the performance standards that is the primary issue in the case.

## PERFORMANCE STANDARDS

Bauer asserts that the trial court erred in failing to render judgment on the verdict in its favor and against ERA for wrongful termination since the jury's verdict established that Bauer had met the performance standards of the contract. We agree that the jury's verdict established that Bauer met its performance standards.

■ ERA's sole basis of termination of this agreement was that Bauer failed to use its best efforts to sell ERA memberships in its territory. The jury, in response to a special issue, found that Bauer did fail to use its best efforts. On the basis of this answer, the trial court entered a take nothing judgment. However, the jury also found that the aggregate monthly billing of ERA memberships in Eloise Bauer & Associates' territory totaled $6,000.00 or more after January 15, 1977. This factual determination finds ample support in the evidence and by the very terms of the contract the jury's response with regard to the *best efforts* issues is immaterial. 4 McDonald's, Texas Civil Practice § 17.31 (1971); 57 Tex. Jur.2d Trial § 547 (1964).

The pertinent provision of the contract is that Eloise Bauer & Associates, as ERA master broker, agreed to,

"4. Actively promote and use his best efforts to sell ERA Memberships in his designated area to achieve one agency office for each 30,000 segment of the area's population. ERA will consider that ERA Master Broker will have satisfactorily performed when the aggregate monthly billing of all ERA Membership Agreements in ERA Master Broker's territory totals not less than $6,000.00 at any time after one year of the date of Master Broker's appointment...."

The fulfillment of this $6,000.00 monthly billing requirement established that Bauer's performance was satisfactory to ERA. We give the clear language of the agreement its plain, grammatical meaning. *Fox v. Thoreson*, 398 S.W.2d 88 (Tex.1966); *General American Indemnity Company v. Pepper*, 161 Tex. 263, 339 S.W.2d 660 (1960). Furthermore, if there were doubts as to the meaning of this paragraph proper construction would require that it be strictly construed against ERA since it was the author of the printed agreement. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1979).

## SUBMISSION OF THE CASE

Several points of error urged on appeal relate to the manner of the trial court's submission of the case to the jury. We review these points separately.

■ The case was submitted by forty special issues. Under the evidence the only manner in which ERA claimed that Bauer failed to use its best effort was in failing to meet the agreed monthly aggregate billing of $6,000.00. Nevertheless, the trial court asked the jury whether Bauer had used its best efforts and also asked in a separate issue whether it had met its $6,000.00 billing standard. The conflicting response of the jury, that Bauer failed to use its best efforts while doing all required of it to achieve best efforts, demonstrates the pitfall of submitting a single question by multiple issues. The practice of asking one question by two sets of issues should be discouraged; it is likely to cause confusion and result in conflicting findings. *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591 (Tex. Civ.App.—Dallas 1980, no writ). Although the jury's finding that Bauer met its monthly billing performance standard—the only standard in question—makes immate-

rial the findings with regard to the failure to use best efforts, this confusing double submission should be avoided upon another trial of the case.

Eloise Bauer & Associates, Inc. further claims that the trial court failed to submit issues on waiver and estoppel. It says that the evidence, at the least, raised a fact issue of whether ERA waived the contract provision that Bauer used its best efforts, or was estopped to assert it, if Bauer met the $6,000.00 monthly performance standard. Because we have already held that the jury's answers to the *best efforts* issues are immaterial, disregarding these answers eliminates any harm which might have occurred by the error alleged in this point.

■ Appellant also alleges that the trial court erred in failing to submit its requested special issue regarding damages for loss of marketing fees. This point is unmeritorious because the trial court adequately submitted issues concerning this theory of recovery to the jury. In response to those issues, the jury found both that Bauer was not entitled to recover for, and that it did not suffer any loss of, marketing fees. Although the manner of submission was not exactly that sought by appellant, it was a fair submission of this theory of recovery and the trial court's failure to submit the issue requested by appellant was not error. *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955). The failure of the court to submit a requested issue cannot be assigned as error when the subject matter of that issue was submitted in other issues. *Goolsbee v. Texas & N. O. R. Co.*, 150 Tex. 528, 243 S.W.2d 386 (1951).

The instruction regarding the right of Mike Gaston, as an employee of ERA to induce his employer to breach a contract if he acted within the course and scope of employment, is assigned as error. Ample evidence was presented in support of Bauer's claim against Gaston. Even ERA recognized that Gaston had engaged in "games, harassment, wiggles, loopholes, technicalities, etc." in an effort to terminate the relationship between Bauer and ERA. Gaston's actions in the complicated relationship were not greatly disputed. At trial Gaston requested and obtained, over Bauer's objection, an instruction concerning his conduct. By this instruction the jury was told that any action on Gaston's part to induce the breach of contract was privileged so long as he acted within the course and scope of his employment. Bauer urges that this erroneous instruction quite directly led to the jury's failure to find that Mike Gaston interferred with the contract between ERA and Eloise Bauer & Associates, Inc., notwithstanding compelling evidence.

■ Bauer concedes that an employee, acting in good faith to further the interests of his employer, is privileged to induce his employer to breach a contract with a third person, so long as he does not use wrongful means. Restatement (Second) of Torts §§ 766, 767, 770 (1979). Appellant urges, however, that when an employee is acting not to further the employer's business, but primarily to further his own interests, or out of malice, the inducement is not privileged even when in the course and scope of employment. In addition to the Restatement appellant cites *Press v. Marvalan Industries, Inc.*, 468 F.Supp. 1072 (S.D.N.Y. 1979); *Porcelli v. Joseph Schlitz Brewing Company*, 397 F.Supp. 889 (E.D.Wis.1975); and Carpenter, *Interference With Contract Relations*, 41 Harv.L.Rev. 728, 752 (1928). While these authorities are not binding on us, they strike a sensible chord. Generally we recognize that privilege to interfere with a third party's contract is limited to the realm of "fair play", *Leonard Duckworth, Inc. v. Michael L. Field & Co.*, 516 F.2d 952, 958 (5th Cir. 1975), and the privilege is ordinarily limited to instances where the interferor acts in good faith and believes that what he does is best for the corporation. *Maxey v. Citizens National Bank of Lubbock*, 507 S.W.2d 722 (Tex. 1974).

■ The instructions in this case concerning Mike Gaston's privilege to interfere with the contractual relationship between ERA and Bauer went too far in telling the jury that Mike Gaston's conduct was privileged so long as he acted within the course

and scope of his employment. The jury might well have believed from the evidence that he acted with malice, solely with his own pecuniary interest, or with other interests together with that of ERA's in mind, yet failed to find that he interfered with the contract in this case. We hold that these instructions are erroneous and should not have been given.

## EVIDENCE EXCLUSION

■ The trial court excluded from evidence an exhibit offered by appellant. It was a letter from ERA'S attorney in Kansas City to Paul Lynch, the ERA staff attorney, who wrote the March 8, 1979, cancellation letter which is the basis of this lawsuit. The lengthy letter advised Lynch that his cancellation letter was not in accordance with ERA's agreement with Bauer and it further spoke of an effort to terminate both Bauer's master broker and membership agreements. It was highly material to several issues. First, it bears on the issue of adequacy of the notice of intent to terminate in the absence of Bauer's meeting the agreed performance standard. This would be a critical issue if the jury had not found that Bauer fulfilled the performance requirement. Second, it goes to the question of motive and malice as they relate to the tortious and punitive aspects of the case. The letter was offered in evidence and objected to; the trial court sustained ERA's objection solely on the ground that the letter was protected by the attorney-client privilege.

Eloise Bauer & Associates, Inc. does not deny that such privilege exists, but says that the privilege was waived by ERA's voluntary production of the letter during pretrial discovery proceedings. The privilege, simply stated, is that when a client seeks legal advice on a matter from a lawyer, then the communications relating to it are permanently protected from disclosure by the client or lawyer, unless waived. 1 Ray, Texas Evidence § 421 (3d ed. 1980). Ordinarily, failure to assert the privilege when a question is asked about a written communication, waives the privilege. *Hurley v. McMillan*, 268 S.W.2d 229 (Tex.Civ. App.—Galveston 1954, writ ref'd n. r. e.). It appears that the voluntary production of the letter by ERA would waive the privilege, but ERA urges that it was accidentally produced and relies on the case of *Gass v. Baggerly*, 332 S.W.2d 426 (Tex.Civ.App.—Dallas 1960, no writ), for the proposition that this kind of document production does not operate as a waiver. That case is inapposite to our facts. In it the document in question had left the attorneys' possession inadvertently and without their knowledge or consent. Here, the evidence was undisputed that the exhibit was voluntarily produced for Bauer's inspection and copying by ERA's privately employed attorney after his review of the document submitted him by ERA. No evidence tended to show that its production was accidental or inadvertent.

The attorney-client privilege generally operates to exclude evidence and courts have tended to strictly construe it. *Dobbins v. Gardner*, 377 S.W.2d 665 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.); *Hurley v. McMillan*, supra. We hold that the voluntary production of the exhibit during pretrial discovery proceedings operated to waive the attorney-client privilege. Thus, the trial court erred in excluding the exhibit from evidence.

## INTERVENTION

In another point of error, Bauer says that the trial court erred in allowing Market Realty to intervene in the lawsuit approximately six weeks before trial. Its petition in intervention alleged a cause of action against ERA as Bauer's principal for fraud and violations of consumer rights committed by Bauer. Bauer complains that the intervention was improper and operated to its prejudice during the trial of the case. The motion to strike the petition in intervention was overruled. Generally, a ruling on this type motion is left to the sound discretion of the trial court, *Rogers v. Searle*, 533 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Jones v. English*, 235 S.W.2d 238 (Tex.Civ.App.—San Antonio

1950, writ dism'd), and absent countervailing considerations, intervention is freely allowed when the claims involve common transactions or occurrences and common questions of law or fact. 1 McDonald's, Texas Civil Practice § 3.47 (1981).

ERA urges that even if the intervention of Market Realty was erroneous, the error is harmless because Market Realty recovered nothing, citing *Weyel v. Lower Colorado River Authority*, 121 S.W.2d 1032 (Tex. Civ.App.—Austin 1938, writ ref'd). That case held where an intervenor had recovered nothing any error in allowing the intervention was manifestly harmless. The mere fact that Market Realty did not recover in this case does not necessarily mean that the intervention was proper or that, if improper, the error was harmless. Market Realty's role in the trial of this case patently operated to the prejudice of Eloise Bauer & Associates, Inc. by attacking its integrity and to fail to recognize prejudice to Eloise Bauer & Associates, Inc. is unrealistic.

Under the state of this case, however, we need not decide whether the trial court abused its discretion in allowing Market Realty to intervene. A take nothing judgment against Market Realty was entered by the trial court; it has not been appealed and that judgment is now final. Therefore, during another trial the question of Market Realty's right to intervene will not arise.

 After considering each of the points raised on this appeal, we conclude that the trial of this case contained various errors which require reversal. In its verdict the jury found the value of the terminated brokerage business to be $70,000.00 and found an amount of attorneys fees. Bauer urges that this Court reverse and render judgment in its favor for $70,000.00, plus attorneys fees, based upon wrongful cancellation of its contract by ERA. Then, they urge us to remand the cause for a new trial on the other claims. We determine that justice will be better served by a retrial of the entire case. The various errors in the trial are the type which lead to the rendition of an improper verdict. Therefore, we reverse the judgment of the trial court. We remand this case for a new trial in the interests of justice. *United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2 (Tex.1971); Tex.R. Civ.P. 434; 6 Tex. Jur.3d Appellate Review § 825 (1980).

The judgment of the trial court is reversed and the cause is remanded to that court for a new trial.