# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00049-CV

**In re Hyde Park Baptist Church**

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

In this original proceeding, relator Hyde Park Baptist Church seeks a writ of mandamus ordering the trial court to vacate its November 29, 2022, order allowing real parties in interest Gilbert and Virginia Burciaga to subpoena files from the Church's legal counsel. Concluding that the discovery is protected by the attorney-client and work-product privileges, we conditionally grant the writ.

### BACKGROUND

In the underlying suit, the Burciagas, who are former members of the Church, sought to recover a previous donation to the Church under theories of breach of contract, fraudulent inducement, negligent misrepresentation, and unjust enrichment. The Burciagas alleged that Church leadership, including Executive Pastor R. Kent Jennings, failed to honor an oral agreement to use the funds in the manner directed by the Burciagas as a condition of their donation.

Among the documents produced to the Burciagas in discovery was a three-page memorandum by attorney Judy Osborn. The November 5, 2020, memorandum, addressed to two

members of the Church's leadership, summarized the findings of an investigation that Osborn had been retained to conduct into allegations that Jennings had improperly attempted to bully or intimidate an employee of an affiliated private school. Shortly after receiving the memorandum, the Burciagas served notice of intent to take Osborn's deposition by written questions together with a subpoena duces tecum seeking the following documents:

a)  Judy Osborn's résumé;

b)  Judy Osborn's file on investigation into complaints about R. Kent Jennings, employee of Hyde Park Baptist Church;

c)  All copies, including drafts of any report provided to Hyde Park Baptist Church for the period June 1, 2020, to the present;

d)  Any report regarding R. Kent Jennings' conduct and/or activities while an employee of Hyde Park Baptist Church; and

e)  All bills for services rendered sent by Judy Osborn to Hyde Park Baptist Church during the period June 1, 2020 to the present.

Objecting to all but the résumé, the Church filed a motion to quash and for protective order, asserting both attorney-client and work-product privileges, and attaching an affidavit by Osborn averring that the materials sought were developed in connection with or reflected communication made in the anticipation of litigation or for trial. The Church also argued that the materials sought had "no relevance to the subject matter of this litigation." The Church later supplemented its motion with an unsworn declaration by J. Kie Bowman, a senior pastor, stating that Osborn had been retained because the Church "feared a lawsuit" concerning, inter alia, actions taken by Jennings as pastor. In responding to the Church's objection, the Burciagas argued in part that any privilege had been waived by the Church's voluntary production of the Osborn

2

memorandum.  The Burciagas also argued that the Church failed to make a proper showing that it anticipated litigation at the time of the memorandum.

At the hearing on the motion to quash, the Burciagas' counsel relied upon Texas Rule of Evidence 511 for the proposition that the Church's voluntary disclosure of Osborn's memorandum waived attorney-client privilege with respect to the remainder of Osborn's investigation file.  The court expressly rejected this theory:

> Now, the file—I know that—where's the file on the lawyer?  I'm going to overrule that.  I mean, you don't get that.  I don't see that if they agree to give you one document that the whole file is done....

In its written order, the court granted the Church's motion to quash and for protection.

The Burciagas filed a motion for reconsideration that focused exclusively on the voluntary-disclosure theory.  The Burciagas attached evidence to their motion demonstrating that Church leadership had disseminated quotations from the Osborn memorandum to more than twenty third parties via email and cited authorities supporting the proposition that a partial disclosure of privileged material may waive privilege as to other materials not disclosed.  At the hearing on the motion for reconsideration, the court asked both parties for additional briefing on the Burciagas' waiver theory and took the matter under advisement.  Following receipt of additional briefing, the court issued an order granting the Burciagas' motion for reconsideration and vacating the previously granted motion to quash and for protective order.

This original proceeding followed.

3

**DISCUSSION**

### A. Availability of Mandamus Review

Mandamus relief is appropriate where the trial court clearly abuses its discretion and there is no other adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 838 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. at 840. Thus, a trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001) (orig. proceeding); *Huie v. DeShazo*, 922 S.W.2d 920, 927-28 (Tex. 1996) (orig. proceeding). A party lacks an adequate remedy by appeal when the trial court erroneously orders disclosure of privileged information, such as documents covered by the attorney-client privilege. *Walker*, 827 S.W.2d at 843.

### B. Abuse of Discretion

Here, as to the abuse-of-discretion requirement for mandamus relief, the Church makes four arguments in its petition: that it was an abuse of discretion for the trial court to entertain the motion to reconsider, as there was no new evidence or argument to consider; that the information sought was irrelevant to the instant suit and therefore not discoverable; that the information was protected by the attorney-client and work-product privileges; and that the Church did not waive any privilege. These arguments, together with the Burciagas' respective counterarguments, are discussed in turn.

#### 1. Motion for Reconsideration

The Church argues first that reconsideration was inappropriate because "[t]he Burciagas presented nothing new to warrant reconsideration." We have not located any authority prescribing the standard of review for the grant or denial of a motion to reconsider a discovery

4

order of the kind at issue here, but we note that the abuse-of-discretion standard ordinarily applies to procedural or other trial-management determinations. *See, e.g.*, *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998) (discovery rulings generally); *National Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 128 (Tex. 1996) (attorney disqualification); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995) (admission of evidence); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (discovery sanctions). For example, the abuse-of-discretion standard applies to a trial court's decision to review a prior summary judgment or, within limits, to grant or deny a motion for new trial. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (holding that discretion to grant new trials is "broad"); *see also Texas Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 850 (Tex. App.—Eastland 2022, no pet.) (holding that "[t]he standard of review for a motion to reconsider a prior summary judgment is whether the trial court abused its discretion"); *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same); *Moroles v. Doctor's Hosp. at Renaissance, Ltd.*, No. 13-09-00425-CV, 2010 WL 596855, at *2 (Tex. App.—Corpus Christi-Edinburg Feb. 18, 2010, pet. denied) (mem. op.) (same).

The record before us indicates that, upon the Burciagas' motion for reconsideration, the trial court was presented with a significantly revised understanding of the scope of the disclosure allegedly constituting waiver, increasing the number of people to whom disclosure of the Osborn memo was known to have been made from a small handful of ranking Church personnel to more than 20 individuals, including volunteers and other nonemployees. While the evidence for that revised understanding was not new, and while the trial court may have been within its discretion to deny the motion for reconsideration had it so ruled, we cannot conclude on this record that it was an abuse of discretion for the court to choose to rehear and receive additional briefing

on that decision. To so hold in this case would imply that a trial court is bound on pain of reversal (or mandamus) to adhere to its own prior rulings even when alerted to the prospect that a fuller consideration of the evidence may have warranted a different ruling. We are aware of no authority requiring that outcome, and we decline to break new ground in this case.

## 2. Relevance

The Church next argues that "[t]he attorney's work file to investigate a separate employment claim in 2020, and her deposition responses about that file, have no relevance to the Burciagas' claim regarding a 2018 charitable donation." The Burciagas counter that "The requested information is relevant to the Burciagas' claims and there is no other way to obtain the information."

Under our procedural rules, the scope of discovery extends to "any matter that is not privileged and is relevant to the subject matter of the pending action." Tex. R. Civ. P. 192.3(a). Although the issue of relevance was briefed to this Court by both parties in the petition and response, respectively, we note that, in the hearings and written submissions below, the parties focused almost exclusively on the issues of privilege and waiver, with little if any substantive discussion of relevance. Because we hold the materials sought in this case to be privileged, we decline to reach the issue of relevance, and for purposes of the privilege discussion, we assume without deciding that the materials are relevant. *See, e.g.*, *In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 802–03 (Tex. 2017) (orig. proceeding) (stating that "[b]ecause either condition [irrelevance or privilege] suffices to warrant mandamus relief, we first consider whether the requested information is privileged"); *see also Maryland Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 457 (Tex. 1982) (orig. proceeding) ("We will assume for purposes of this opinion that the information ordered to be disclosed is relevant [and decide] whether a privilege from

6

discovery is applicable in this situation" (citation omitted)). Accordingly, nothing in this opinion should be construed as holding that the disputed materials are relevant for purposes of determining admissibility.

### 3. Privilege

Third, the Church argues that "[t]he attorney's file and deposition responses are protected from discovery by the attorney-client and work-product privileges." We understand the Church's argument here to be directed at all three categories of disputed requests: Osborn's investigation file; any reports or drafts of reports provided to the Church, including any report about Jennings's conduct while a Church employee; and Osborn's bills. Our analysis proceeds upon that assumption.

#### a. *Attorney-Client Privilege*

In Texas, the attorney-client privilege is governed by Rule 503 of the Texas Rules of Evidence. Rule 503(b), as relevant here, provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client . . . between the client or the client's representative and the client's lawyer or the lawyer's representative . . . ." Tex. R. Evid. 503(b)(A). A communication is "confidential" if it is not intended to be disclosed to third persons other than (1) those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or (2) those reasonably necessary for the transmission of the communication. Tex. R. Evid. 503(a)(5). An attorney's investigation may constitute the rendition of legal services such that it falls within the attorney-client privilege. *See Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 334 (Tex. App.—Austin 2000 pet. denied).

7

### b. *Work-Product Privilege*

Rule 192.5 of the Texas Rules of Civil Procedure, as relevant here, defines "work product" as (1) "material prepared or mental impressions developed," or (2) "communication made," where such material, impressions, or communication were made, prepared, or developed "in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys." The Rule provides that so-called "core" work product—work product that contains an attorney's mental impressions, opinions, conclusions, or legal theories, is not discoverable at all, and that other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of its case and that it cannot reasonably obtain the materials by other means.

The Texas Supreme Court has described the work-product privilege as protecting two distinct but related concepts: First, the privilege protects the attorney's thought process, which includes strategy decisions and issue formulation, and notes or writings evincing those mental processes. *Occidental Chem. Corp. v. Banales*, 907 S.W.2d 488, 490 (Tex. 1995) (orig. proceeding) (per curiam) (citing *National Union Fire Ins. Co. v. Valdez,* 863 S.W.2d 458, 461 (Tex. 1993) (orig. proceeding)). Second, the privilege protects the mechanical compilation of information to the extent such compilation reveals the attorney's thought processes. *Id*. As the First Court of Appeals in Houston has stated, the privilege "generally protects against disclosure of specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories, prepared and assembled in actual anticipation of litigation or for trial." *Evans v. State Farm Mut. Auto. Ins. Co.*, 685 S.W.2d 765, 767 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

### c. *Procedure for Establishing Privilege*

A party who seeks to exclude documents, records, or other matters from discovery has the affirmative duty to specifically plead the particular privilege or immunity claimed and to request a hearing on the party's motion. *Peeples v. Honorable Fourth Sup. Jud. Dist.*, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding). The trial court should then determine whether an in camera inspection is necessary. *Id.* If such inspection is ordered by the trial court, those materials for which the inspection is sought must be segregated and produced to the court. *Id.* When the party asserting a privilege has made a prima facie case for its claim, the burden shifts to the requesting party to point out to the court which specific documents or groups of documents it believes require inspection and, if applicable, to prove that an exception to the privilege applies. *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279–80 (Tex. 2016) (orig. proceeding); *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 226-27 (Tex. 2004) (orig. proceeding).

The party asserting a privilege in opposition to discovery may establish a prima facie case "by testimony or affidavit," although "[t]he party need produce 'only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *In re National Lloyds*, 532 S.W.3d at 804 (quoting *In re Memorial Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding)).

### d. *Prima Facie Claim of Privilege*

The Church argues that "[t]he Church established a prima facie case on applicability of the privileges." Specifically, the Church argues that it satisfied the prima facie requirement by asserting the attorney-client and work-product privileges in its motion to quash and for protection and by presenting an affidavit from attorney Osborn together with testimony

9

from Bowman, the senior pastor at the Church who initially retained Osborn, and various other documentary evidence.

In her affidavit, Osborn stated that the information in her attorney file requested by the Burciagas "reflect[s] communications between: 1.) the client or its representatives and myself in the capacity as counsel for the Church; 2.) the client, the client's representatives, and myself and a lawyer also representing Hyde Park Baptist Church; or 3.) among lawyers representing the same client." She further averred that "[a]ll of these communications were made for the purpose of facilitating the rendition of legal services to the Client in the investigation of an employment issue as requested by the Church," and that "the majority of documents and materials sought . . . were developed in connection with the anticipation of litigation or for trial . . . or reflect communications made in anticipation of litigation or for trial between and among the Church and/or their attorneys."

In an unsworn declaration, Bowman stated that the Church "feared a lawsuit" from its affiliated private school relating to Jennings's conduct (among other matters), and, on the advice of another attorney hired in anticipation of that litigation, "retained attorney Judy Osborn to provide legal services in anticipation of future legal disputes and/or litigation concerning Mr. Jennings' actions." In his testimony at the hearing on the motion to reconsider, Bowman testified that he retained Osborn "to obtain legal advice" and that he did not intend that his "communications with Judy Osborn be shared with third parties." The Church argues that this uncontroverted evidence suffices to establish a prima facie claim of privilege. We agree. *See, e.g.*, *In re DuPont*, 136 S.W.3d at 223 (explaining that "an affidavit, even if it addresses groups of documents rather than each document individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege");*see also Pittsburgh Corning Corp. v. Caldwell*,

10

861 S.W.2d 423, 424 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding) (conditionally granting mandamus relief from trial court's order for production of certain documents where privilege was asserted via uncontroverted affidavit of relator's counsel and expressly rejecting real parties' argument that "the affidavit was insufficient to show privilege").

While it is true that "an affidavit is of no probative value if it merely presents global allegations that documents come within the asserted privilege," *In re DuPont*, 136 S.W.3d at 224 (citing *Ryals v. Canales*, 767 S.W.2d 226, 229 (Tex. App.—Dallas 1989, orig. proceeding)), the affidavit in this case is not merely conclusory but instead sets forth the factual basis for the applicability of privileges to the documents at issue, specifically, that they were made for the purpose of facilitating the rendition of legal services related to a specific situation and in anticipation of litigation related to that situation and were not intended to be disclosed to third parties. *Compare Shell Western E & P, Inc. v. Oliver*, 751 S.W.2d 195, 196 (Tex. App.—Dallas 1988, no writ) (finding prima facie claim of privilege where affidavit stated that "documents . . . were written by a lawyer to a client" and "consist[ed] of communications from a client to a Shell . . . .lawyer . . . .") *with In re Temple–Inland, Inc.*, 8 S.W.3d 459, 462 (Tex. App.—Beaumont 2000, orig. proceeding) (finding no prima facie claim of privilege where affidavit merely stated that production "would violate the attorney-client privilege"). Here, Osborn's uncontroverted affidavit, together with Bowman's unsworn declaration and sworn testimony at the hearing, attest to the factual predicates for the privileges invoked and therefore constitute a prima facie showing.

In their response, the Burciagas argue that "[t]he Osborn Report was not prepared 'in anticipation of litigation'" as required to be protected under the work-product privilege. We disagree. This Court has expressly disavowed any "bright-line test for determining when litigation

11

is reasonably anticipated, such as whether or not suit is ultimately brought, instead holding that the question requires "a professional legal judgment made in light of the specific facts of a case—a judgment-call ultimately made by the court." *Wiley v. Williams*, 769 S.W.2d 715, 718 (Tex. App.—Austin 1989, orig. proceeding) (holding that attorney's testimony that defendant called to inform him of accident and requested representation for any resulting legal problems "was proof from which the district court could have concluded that the materials were assembled by an attorney or his agents in reasonable anticipation of litigation"). *Id.* We conclude that attorney Osborn's and Bowman's testimony in the instant case that, "fear[ing] a lawsuit," the Church retained Osborn to help assess its exposure suffices to establish that the materials were assembled in reasonable anticipation of litigation.

Procedurally, the Burciagas argue that "[t]he Church failed to meet its burden of proof by failing to submit documents for an *in camera* inspection." We disagree. As noted above, the Texas Supreme Court in *Peeples* "outlined the procedure to be followed by a party seeking to exclude documents from discovery." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986) (orig. proceeding) (per curiam) (citing *Peeples,* 701 S.W.2d at 635). As explained in *Weisel Enterprises*, "[a]ny party who seeks to exclude documents from discovery must specifically plead the particular privilege, immunity or exclusion applicable to the document in question and produce evidence supporting such claim." *Id.* "The trial court must then determine whether an *in camera* inspection is necessary, and, if so, the party seeking protection must segregate and produce the documents to the court." *Weisel Enters.*, 718 S.W.2d at 58. Neither *Peeples* nor *Weisel Enterprises* gives any indication that the party invoking the privilege has an affirmative duty to tender the documents for in camera inspection on its own initiative.

12

True, it has been held that, where a party asserting privilege claims makes a prima facie showing of privilege, the trial court *must* conduct an in camera inspection of those documents before deciding to compel production. *In re Christus*, 492 S.W.3d at 279 (citing *In re DuPont*, 136 S.W.3d at 225-26); *see also Arkla, Inc. v. Harris*, 846 S.W.2d 623, 631 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); *Shell Western*, 751 S.W.2d at 196. Put another way, a party that establishes a prima facie case of privilege for its documents is "entitled to an *in camera review* before being required to produce these documents*." In re DuPont*, 136 S.W.3d at 225-26. The Burciagas cite no case, however—and our own review has found none—that permits or requires production of assertedly privileged material on the ground that the party invoking the privilege did not take the initiative to request in camera review. On the contrary, the Texas Supreme Court has held that "the *requesting party* has the burden to point out to the court which specific documents or groups of documents it believes require inspection." *Id.* at 226 (citing *In re Monsanto Co.*, 998 S.W.2d 917, 925 (Tex. App.—Waco 1999, no pet.)) (emphasis added).

The Burciagas cite Texas Supreme Court precedent for the proposition that "[w]hen an objection to production is based on a specific privilege, the document itself may constitute the only evidence substantiating the claim of privilege," such that "affidavits or live testimony" may not constitute sufficient proof. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hoffman*, 746 S.W.2d 305, 310 (Tex. App.—Dallas 1988, no writ) (citing *Weisel Enters.*, 718 S.W.2d at 58 (emphasis added)). We do not find the instant case to be within the class of cases contemplated by the applicable precedents. In *Weisel Enterprises*, for example, despite its passing reference to "affidavits and live testimony," the only putative support for the privilege claim was a "summary listing of documents under the heading 'Attorney-Client/Attorney Work-Product'," which, the Court stressed, "was merely an *unverified*, global allegation that the list of documents was

protected by one or both privileges." *Id.* (emphasis added). In other words, notwithstanding its dictum, *Weisel Enterprises* provides no guidance as to when sworn affidavits or testimony do not suffice. In any event, we find ample precedent from the courts of appeal of this State for the proposition that "[a] trial court does not abuse its discretion by failing to review documents *in camera* if there is sufficient evidence about the privileged nature of the documents upon which the trial court could reasonably base its order, such that resort to the documents themselves is unnecessary." *In re Cayman Island Firm of Deloitte & Touche*, No. 04-01-00491-CV, 2001 WL 1042233, at *4 (Tex. App.—San Antonio Sept. 12, 2001, orig. proceeding) (not designated for publication) (citing *Enron Oil & Gas Co. v. Flores*, 810 S.W.2d 408, 413 (Tex. App.—San Antonio 1991, orig. proceeding); *accord G & H Steel, Inc. v. Heard*, No. C14-89-00279 CV, 1989 WL 63648, at *3 (Tex. App.—Houston [14th Dist.] June 15, 1989, orig. proceeding) (not designated for publication) (per curiam) (in camera review not always required); *In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *3 (Tex. App.—Dallas Dec. 31, 1998, orig. proceeding) (not designated for publication) (same).

The conclusion that "the documents themselves" are not "the only evidence substantiating the claim of privilege" in this case finds further support from cases addressing the particular categories of request at issue here. First , the Burciagas have requested "Judy Osborn's file on investigation into complaints about R. Kent Jennings, employee of Hyde Park Baptist Church." Because Osborn has averred that she was hired solely to investigate Jennings, this request in effect seeks production of her entire file. The Texas Supreme Court has held that "[an] attorney's entire litigation file is privileged per se, regardless of whether unprivileged information is included in the file." *In re National Lloyds*, 532 S.W.3d at 805 (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Valdez*, 863 S.W.2d 458 (Tex. 1993)). In *National Lloyds*, the court noted

14

that "[t]he organization of the file, as well as the decision as to what to include in it, necessarily reveals the attorney's thought processes concerning the prosecution or defense of the case" and that, if such information were discoverable, an attorney would "be restricted in the organization and maintenance of his or her files by the prospect that they might have to be revealed in their entirety." *Id*. at 804-05 (quoting *Valdez*, 863 S.W.2d at 460). The Court concluded that "an attorney's litigation file goes to the heart of the work-product privilege," and "a party is therefore prevented from requesting the entire file, which is almost certain to encompass numerous irrelevant and immaterial documents as well as privileged information." *Id*. at 805 (quoting *Valdez*, 863 S.W.2d at 460-61 (internal quotation marks and punctuation omitted). Where, as here, the attorney has averred under oath that "[a]ll of [the] communications were made for the purpose of facilitating the rendition of legal services" and "the majority of documents and materials" were developed "in anticipation of litigation or for trial," we conclude that the rule of *National Lloyds* and *Valdez* bars an order compelling production of her entire file, and thus, the Church has established a prima facie case of privilege as to Osborn's investigation file.

Second, the Burciagas have requested "[a]ll copies, including drafts of any report provided to Hyde Park Baptist Church for the period June 1, 2020, to the present" and "[a]ny report regarding R. Kent Jennings' conduct and/or activities while an employee of Hyde Park Baptist Church." The Church does not assert any privilege as to the lone report already produced. Thus, the Burciagas' requests pertain only to copies of other reports, if any, or earlier drafts of the report ultimately produced. As for other reports, to the extent that such reports were made in confidence, they would necessarily include Osborn's "mental impressions, opinions, conclusions, or legal theories" and thus constitute core work product not subject to discovery. Tex. R. Civ. P. 192.5. As for drafts of the previously produced report, it is well settled that the scope of the work-product

15

privilege extends to confidentially communicated drafts of documents even where the final versions are not intended to remain confidential. *See, e.g.*, *In re City of Dickinson*, 568 S.W.3d 642, 646 (Tex. 2019) (orig. proceeding) (holding emails between attorney and client's employee attaching drafts of affidavit were privileged); *In re ExxonMobil Corp.*, 97 S.W.3d 353, 364–65 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (holding transmittal memos from attorney to client's employees discussing draft agreements to be privileged); *In re Toyota Motor Corp.*, 94 S.W.3d 819, 826 (Tex. App.—San Antonio 2002, orig. proceeding) (holding that draft reports sent to relator's attorneys for review and comment were privileged communications); *In re Monsanto*, 998 S.W.2d at 931 (holding drafts of patent applications and letters to EPA sent to attorneys for review and comment to be privileged). We conclude that the Church has established a prima facie case of privilege for these two categories of documents.

Finally, the Burciagas have requested "[a]ll bills for services rendered sent by Judy Osborn to Hyde Park Baptist Church during the period June 1, 2020 to the present." The Texas Supreme Court has held that "compelling en masse production of a party's billing records invades the attorney work-product privilege." *In re National Lloyds*, 532 S.W.3d at 820. The court explained that "cumulatively, billing records constitute a mechanical compilation of information that, at least incidentally, reveals an attorney's strategy and thought processes." *Id*. at 803. "For example," the court continued, such records

> reveal when and where attorneys strategically deploy a client's resources; which issues were addressed by experienced lawyers as compared to less experienced counsel; the subject-matter expertise of an attorney working on a particular aspect of the case; and who was hired as consultants—including consulting experts and jury consultants—and when. This information provides detailed information regarding a party's litigation decisions and also illuminates the relative significance of or concern about particular matters.

16

*Id*. at 805. Thus, the court concluded that unless a party seeks to recover its own attorney fees or is attempting to use its attorney-billing records to challenge the opposing party's attorney fees, "the party's attorney should not be restricted in the preparation or presentment of his or her billing records by the prospect that they might have to be revealed in their entirety." *Id*. Accordingly, we conclude that the Church has established a prima facie case of privilege for Osborn's billing records.

### e. Waiver

Having determined that the Church presented a prima facie case for privilege for all the categories of requested documents, we next consider whether the Burciagas have met their burden to prove that an exception to the privilege applies. *In re Christus*, 492 S.W.3d at 280 (citing *In re Memorial Hermann*, 464 S.W.3d at 698). We hold that they have not.

Without conceding that the requested materials were privileged, the Burciagas argue that any privilege was waived by the voluntary disclosure of Osborn's three-page memo. Citing Rule 511 of the Texas Rules of Evidence, which provides that "[a] person upon whom [the] rules confer a privilege against disclosure waives the privilege if . . . the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged," the Burciagas assert that the report constitutes a "significant part" of the requested materials for purposes of that Rule. Tex. R. Evid. 511(a)(1). However, they do not identify any cases interpreting Rule 511's "any significant part" language at issue here. The cases that they rely on hold only that disclosure of a particular document waives privilege *as to that document. See, e.g.*, *Eloise Bauer & Assocs., Inc. v. Electric Realty Assocs., Inc.*, 621 S.W.2d 200, 204 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.) (voluntary production of exhibit during

pretrial discovery proceeding operated to waive privilege as to that exhibit); *Jordan v. Court of Appeals for Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) (orig. proceeding) (privilege waived where party resisting discovery could not show inadvertence of prior disclosure of documents to grand jury). The Church cites authorities holding that a party's disclosure of statements attributed to his attorney do not "open the door to the remainder of [the party's] privileged communications with his lawyer or to the production of documents held by [his] lawyer." *In re Microvast, Inc.*, No. 01-18-00049-CV, 2018 WL 4131068, at *3 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, orig. proceeding) (mem. op.) (noting that relator seeking discovery relied only on cases examining "whether the disclosure of particular documents resulted in a waiver of privilege *for those documents alone*" (emphasis added)); *see also In re Carbo Ceramics Inc.*, 81 S.W.3d 369, 377 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding.) (holding that under Rule 511 voluntary disclosure of letter from client to attorney did not waive privilege for all other documents withheld on basis of attorney-client privilege).

Our own review of the case law suggests a dearth of applicable precedent precisely on point. During the pendency of this proceeding, however, the Texas Supreme Court delivered an opinion in a case that provides useful guidance in our evaluation of the Burciagas' proposed application of Rule 511 in the instant case. *See University of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity*, No. 21-0534, 2023 WL 4278243 (Tex. June 30, 2023). At issue in that case, as relevant here, was whether the public disclosure of a report summarizing the findings of an investigation commissioned by a public university system and conducted by an independent firm held to be acting as a lawyer's representative to evaluate allegations of undue influence in a component university's admissions process resulted in waiver of the attorney-client privilege otherwise applicable to the documents underlying the report. *Id*. at *1. In discussing the

18

application of Rule 511, the Court held that, "to the extent the investigator's final report *directly quoted* from *or otherwise disclosed* 'any significant part' of the disputed documents, publication of the report waived the university's attorney-client privilege *as to those specific documents*." *Id*. (emphasis added).

The investigator in *Franklin Center* "obtained thousands of documents from [the component university]—including approximately 9,500 emails—and conducted interviews with relevant individuals" before completing its investigation and presenting the system's leadership with a 101-page final report containing findings, recommendations, and suggestions for future best practices, which was published on [the university's] website." *Id*. Documents obtained or created by the investigator in that case totaled more than 625,000 pages and included internal emails exchanged among the system, its component institution, and their lawyers and clients, discussing or transmitting legal advice, that were provided to the investigator; interview questions and notes created by the investigator during its interviews of system and university employees and officials; and draft redlined communications from system general counsel to interviewees that had been shared with the investigator. *Id*. at *2.

Franklin Center, the party seeking disclosure in that case, argued that, because the university system publicly disclosed the investigator's report, the system thereby waived attorney-client privilege with respect to the underlying documents. *Id*. at *9. Rejecting an argument that such disclosure waived privilege as to all such documents, the Court held that, under Rule 511(a)(1), it was "possible … that publication of the [investigator's report] resulted in a limited waiver with respect to some of the underlying communications" if the report either (1) "directly quote[d]" from the email and interview documents in dispute, or (2) unambiguously refer[ed] to and describe[d] any of the documents in dispute." *Id*. The Court remanded the case

19

to the trial court as "the appropriate forum to determine in the first instance whether the [report was] quoting from or describing documents [in dispute] and, if it [was], whether the report discloses a 'significant part' of any of those documents." *Id.* at *11.

The case before us has a number of obvious similarities to *Franklin Center*. As in *Franklin Center*, this case involves an investigation by an attorney (or attorney's representative) in which the attorney reviewed confidential communications and documents and interviewed persons with knowledge of the subject matter under investigation. As in *Franklin Center*, the investigator here prepared a report based on those interviews and that review. And, as in *Franklin Center*, the party seeking disclosure in this case argues that the partial disclosure of the communications and interviews relied on in the production of the report constitutes "any significant part" of those materials for purpose of Rule 511(a)(1), thereby vitiating privilege as to those materials.

We hold that, under *Franklin Center*, privilege may have been waived only as to documents responsive to the Burciagas' request that are otherwise relevant to the subject matter and were either directly quoted or unambiguously referred to and described in the Osborn memo. Furthermore, *Franklin Center* suggests a two-step process for the trial court in determining whether such waiver occurred: first, to determine whether the report was indeed quoting from (or unambiguously referring to and describing) disputed documents and, second, if so, to determine whether the disclosure constitutes a "significant part" of the documents quoted or described.

As discussed above, it is not necessarily an abuse of discretion for a court to deny discovery on the basis of privilege without first conducting an in camera inspection if other evidence establishes a prima facie case for application of the privilege and is not controverted by the party seeking disclosure. *In re Cayman Island Firm*, 2001 WL 1042233, at *4. On the other

hand, it is an abuse of discretion to order the production of such materials absent an in camera review. *In re DuPont*, 136 S.W.3d at 225-26. We find no case holding that a trial court may order production of materials as to which the party resisting discovery has made a prima facia case for privilege without first reviewing those materials in camera.[1]

We therefore hold that it was abuse of discretion to order the production of documents under the Burciagas' waiver theory.

### CONCLUSION

For the foregoing reasons, we conditionally grant the requested relief and direct the trial court to vacate its November 29, 2022, order granting the request for reconsideration and ordering production of the disputed materials. The writ will issue only if the trial court does not comply.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Filed: August 22, 2023

---

[1] We do not reach the issue of offensive use, raised briefly in the Church's petition but not discussed in the response. Nothing in this opinion should be construed as holding that the Osborn memorandum is or is not admissible or that the disputed materials underlying the memorandum would or would not be subject to discovery under an offensive-use theory or other properly preserved ground for waiver.